No. 86-591

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

_____

MERIDIAN MINERALS COMPANY,

Plaintiff/Appellant,

vs.

NICOR MINERALS, INC., and NICOR MINERAL VENTURES, INC.,
Defendants/Respondents,

and COSTAIN HOLDINGS, INC.,
Intervenor/Respondent.

_____

APPEAL FROM: District Court of the Eighteenth Judicial District,
In and for the County of Gallatin
The Honorable Joseph B. Gary, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

GOUGH, SHANAHAN, JOHNSON & WATERMAN; Ronald Waterman,
Helena, Montana.

For Respondent:

GARLINGTON, LOHN & ROBINSON; Gary Graham,
Missoula, Montana,
GOETZ, MADDEN & DUNN; James H. Goetz,
Bozeman, Montana,
MAYER, BROWN & PLATT; Thomas P. Johnson,
Denver, Colorado.

_____

Submitted: June 8, 1987

Decided: September 3, 1987

Filed: SEP 3 - 1987

_Ethel M. Harrison_
Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Meridian Minerals Company (Meridian) appeals an adverse declaratory judgment entered in the District Court, Eighteenth Judicial District, Gallatin County. Meridian brought suit against Nicor Minerals, Inc. (Minerals) and Nicor Mineral Ventures (Ventures) for a declaration that the proposed transaction by Minerals to merge Ventures into a subsidiary of Costain Holdings, Inc. (Costain) triggered preemptive right and resignation provisions of a venture agreement between Meridian and Ventures. Costain intervened in the action, which was tried without a jury. The District Court entered judgment in favor of Minerals, Ventures and Costain. Meridian appeals from that judgment. We affirm.

In early 1984, Meridian, a wholly-owned subsidiary of Burlington Northern (BN), and Ventures, a wholly-owned subsidiary of Minerals (in turn a subsidiary for Nicor, Inc., a holding corporation for Northern Illinois Gas Company) entered into a venture agreement to develop a talc mine in Madison County, Montana. Although BN owned the talc site, it leased the mineral interest to Ventures and authorized Meridian to explore and develop the property with Ventures on BN's behalf. Meridian and Ventures were the only parties to the agreement, each with a 50% interest in the venture.

In spring, 1985, Minerals began negotiations to merge its subsidiary, Ventures, with a subsidiary of Costain. Meridian learned of the deal and filed for a declaratory judgment from the District Court protecting what Meridian thought to be its preemptive right under the terms of the venture agreement. At issue here is the District Court's interpretation of that right.

The agreement negotiators used a Rocky Mountain Mineral Law Foundation model form for their mining venture agreement. The form language of the agreement gave each participant a preemptive right to purchase the other participant's interest in the agreement, before the other participant could transfer those interests to a third party. A clause was added by Meridian to the preemptive right provision form language which specifically brought within the limitations a transfer of protected interests effected by transfers of stock.

There were two other sections of this agreement central to this case. One, the agreement specifically excluded from the preemptive right a corporate merger of a participant. Second, it designated Ventures as the operator, but provided that a transfer by Ventures of its interest in the agreement would be deemed an offer to resign as operator.

The actual language of the contract follows:

### ARTICLE XV

#### Transfer of Interest

15.1 General. A Participant shall have the right to transfer, grant, assign, encumber, pledge or otherwise commit or dispose of (transfer) to any third party all or any part of its interest in or to this Agreement, its Participating Interest, or the Assets.

15.2 Limitations on Free Transferability. The transfer right of a Participant in Section 15.1, expressly including a transfer of an interest effected by a transfer of stock, shall be subject to the following terms and conditions: (New language emphasized.)

* * *

(i) Such transfer shall be subject to a preemptive right in the other Participant as provided in Section 15.3.

- 3 -

15.3 Preemptive Right. Except as otherwise provided in Section 15.4, if a Participant desires to transfer all or any part of its interest in this Agreement, any Participating Interest, or the Assets, the other Participant(s) shall have a preemptive right to acquire such interests as provided in this Section 15.3.

15.4 Exceptions to Preemptive Right. Section 15.3 shall not apply to the following transfers:

(a) Transfer by a Participant of all or any part of its interest in this Agreement, any Participating Interest, or the Assets to an Affiliate;

(b) Incorporation of a Participant, or corporate merger, consolidation, amalgamation or reorganization of a Participant by which the surviving entity shall possess substantially all of the stock, or all of the property rights and interests, and be subject to substantially all of the liabilities and obligations of that Participant; and (Emphasis ours.)

(c) The grant by a Participant of a security interest in any interest in this Agreement, any Participating Interest, or the Assets by mortgage, deed of trust, pledge, lien or other encumbrance.

8.4. Resignation; Deemed Offer to Resign. The Operator may resign upon two months prior notice to the Management Committee, in which case, if there is only one other Participant, such Participant may elect to become the new Operator by notice to the Management Committee within 30 days after the notice of resignation. If upon such resignation there are more than two Participants, the new Operator will be selected by the Management Committee, with only the nonmanaging Participants entitled to vote. If any of the following shall occur, the Operator shall be deemed to have offered to resign, which offer shall be accepted by the other Participant(s) by notice to the Operator, if at all, within ninety days following such deemed offer:

* * *

- 4 -

> (h) the Participant acting as Operator transfers its interests in the Venture and in the properties to a third party that is not an Affiliate. (Emphasis ours.)

In spring, 1985, Nicor, Inc. decided to divest itself of its mineral interests, including the talc operation. The following October, Meridian found out about the proposed divestiture and wrote Ventures asserting the applicability of the Section 15.3 preemptive right. The president of Ventures responded that any contemplated transfer was not within the scope of the preemptive right because the right was restricted only to "participants," and the transfer contemplated by Nicor, Inc., and Minerals was a transfer of shares by Minerals, not Ventures, and was therefore not restricted by the Ventures agreement.

Meridian's response was to file an action for declaratory judgment in the District Court. Meridian's argument was that insofar as the talc operation was concerned, the proposed merger was within the scope of the Section 15.3 Preemptive Right and Section 8.4 Deemed Resignation provisions.

In February, 1986, Minerals went one step further with the proposed merger, through a letter of intent with Costain. Under the terms of this letter the parties agreed that Minerals would surrender its shares in Ventures to Costain for cash or other consideration and that Ventures would be the surviving corporation to the merger. The parties further agreed that Ventures would retain all of its pre-merger assets and liabilities and would be bound by all of its pre-merger contracts. Ventures only change after the merger would be that its stock would be owned by Costain, not Minerals. The negotiations for the merger were exclusively between Costain and Minerals. Ventures did not participate

in these negotiations, nor was its director/president informed of the plans to merge until after the decision was made by Nicor, Inc. and Minerals.

After Minerals and Costain entered into the February, 1986, letter of intent, Meridian amended its complaint to specifically address that transaction and sought further declaration that the Costain merger would constitute a deemed offer by Ventures to resign as operator (under Section 8.4). The Meridian suit was brought against Minerals and Ventures. Costain has intervened on Minerals' and Ventures' behalf.

Minerals, Ventures and Costain contend that the Costain merger did not trigger either the preemptive right or deemed resignation clauses of the Ventures agreement on the claim that the merger was a divesture by Minerals of its interest in Ventures. The clauses were not enforceable, they argue, simply because Minerals was not a "participant" to the Ventures agreement. They also assert their right to avoid the preemptive right provision under the exception in the venture agreement providing that a corporate merger would not trigger Meridian's preemptive rights.

Meridian's position is that their specific addition of the qualifying phrase "expressly including a transfer of an interest effected by a transfer of stock," was meant to prevent avoidance of the preemptive right by use of stock maneuvers. It further asserts that the qualifying phrase of Section 15.2 was also meant to modify the Section 15.4 merger exception, so the preemptive right merger exception would not apply to mergers transferring ownership of either party's interest to an unaffiliated third party. In either case, Meridian asserts that this Court should not, in equity, allow the Nicor parties to use the merger form of the transaction as a device for avoiding the preemptive right. Finally, Meridian contends that the merger transaction constituted a

deemed offer by Ventures to resign as operator under Section 8.4.

Issues raised on appeal are:

1. Was the District Court correct in determining that Minerals and Ventures were separate and distinct corporate identities and that Minerals was not bound by the preemptive right provision of the venture agreement between Ventures and Meridian?

2. Was the District Court correct in refusing to find that the qualifying language added to the preemptive portion of the venture agreement applied to the merger transaction between Minerals and Costain, as Meridian argued?

3. Was the District Court correct in holding that the proposed merger negotiated between Minerals and Costain properly fell within the merger exception of the venture agreement?

4. Was the District Court correct in finding that the merger did not trigger the deemed offer to resign as operator clause of the venture agreement?

Trial was held on July 10 and 11, 1986. On October 2, 1986, after extensive post-trial briefing and oral arguments by counsel, the District Court entered its Findings of Fact, Conclusions of Law and Memorandum, denying the relief sought by Meridian.

The District Court first held that Minerals was not a "participant" under the venture agreement and thus the Costain merger did not trigger either the preemptive right or the deemed resignation clauses. The court found that under the express terms of the venture agreement only Meridian and Ventures were "participants"; Minerals was not. Further the District Court found:

5. That from the following evidence the Court finds that Minerals and Ventures are separate and independent corporations;

   A. Ventures makes its own corporate decisions including budgets, venture agreements, and personnel matters.

   B. Ventures complies with all statutory requirements for corporate operations including Articles of Incorporation and By-Laws.

   C. Minerals and Ventures both have separate bank accounts.

   D. Ventures does not accept responsibility for Minerals' debts.

   E. The business records are separate.

   F. The activities of the corporations are different and Ventures engages in exploration and development while Minerals is an investment company.

   G. Ventures' principle offices are in Colorado and Minerals' are in Illinois.

   H. Neither corporation has publicly represented that they are one and the same.

   I. The Boards of Directors are not identical.

   J. The presidents are different.

   K. Corporate funds have not been co-mingled nor has credit been used interchangeably to obtain Loans.

The District Court held:

   4. That insufficient evidence was presented to this Court to conclude there was such a commonality of interests between the parent and subsidiary such that the parent Minerals can be considered the same as Ventures, thus allowing the Court to pierce the corporate veil and designate

- 8 -

Minerals to be a participant in the Venture Agreement between Meridian and Ventures.

5. That because Minerals was not a participant with Meridian, their negotiation with Costain does not trigger the preemptive clause to which Ventures and Meridian originally agreed.

The District Court noted that the foregoing findings and conclusions, alone, were sufficient to defeat Meridian's claims. Nonetheless, the District Court additionally held that the Costain merger was within the "corporate merger" exception to the preemptive right clause. The District Court found:

17. That the transaction between Costain and Minerals would leave Ventures in the same condition as present except that Costain rather than Minerals would be the owner of the stock.

18. That after the proposed transaction Ventures would continue to possess the same property rights and interests as present, and continue to be subject to all present liabilities and obligations.

19. That Ventures' assets are more extensive than the Venture Agreement with Meridian, and included considerable other assets such as mining claims, other mineral rights, and operations, and that all of these assets will remain in Ventures, which fact is important to conclude that a true merger was affected, and not a sale of the Talc Agreement.

20. That the contemplated transaction contains the elements of a legal merger, and as such fits within the exception to the preemptive rights defined in 15.4.

The District Court held:

6. That the Venture Agreement between Ventures and Meridian is clear and unambiguous, and introduction of parol evidence did not modify the unambiguous term "merger" in the joint venture agreement.

7. That the Court finds no wrongful purpose behind the contemplated merger since the original

Agreement specifically stated that a merger was an exception to the preemptive clause, which was bilaterally available to both parent corporations.

8. That while the contemplated transaction involved the transfer of stock ownership in return for consideration, the survival of the entity with all its assets and liabilities indicates it can nevertheless meet the elements of a merger, as opposed to a sale, and fit within the parameters of the Venture Agreement exception.

9. That because Ventures will maintain its interest in the Agreement, and maintain its assets and liabilities, this contemplated transfer would not involve the Section 15.3 elements of "interest" in the Agreement, "Participating Interest," or "Assets."

10. That the evidence presented by the Plaintiff does not prove a "deemed offer to resign" as Operator, under Article 8.4.

Pursuant to its Findings of Fact and Conclusions of Law and Memorandum, the District Court entered judgment denying the relief requested by Meridian and granting the defendants' request for a declaration that the Costain merger would not fall within the preemptive right or deemed resignation clauses of the Venture Agreement.

Meridian's principal contention is that Minerals should not, in equity, be permitted to rely on the "legal fiction" of its subsidiary, Ventures' separate existence to avoid the contractually obligatory preemptive right. Meridian urges this Court to reexamine the facts and exercise its equitable powers to pierce the corporate veil between Minerals and Ventures. Meridian asserts that the District Court's failure to recognize the corporate fiction permits Ventures to take unfair advantage of Mineral's insulation from the venture agreement. In support of its assertion that Minerals and Ventures are abusing their corporate privileges, Meridian

- 10 -

argues that: 1) Three officers of Nicor, Inc. control the Board of Directors of both Minerals and Ventures; 2) That Minerals and Ventures share common board members, with the exception of one person; 3) That they share six common officers; 4) That Ventures' operating funds are provided by Minerals, whose funds are in turn covered by Nicor, Inc.; 5) That when in need of funds, Minerals and Ventures merely issue stock to their parent corporation; 6) That Ventures and Minerals have expenditure limits which cannot be exceeded without consent of the parent corporation; 7) That Minerals has no operating assets, no separate offices and no separate employees from Nicor, Inc.; 8) That meetings of the boards for Minerals and Ventures were customarily one after another, and in one instance, simultaneously; 9) That Minerals and Ventures were subject to uniform operating procedures imposed by Nicor, Inc.; and, 10) That Minerals had knowledge of the preemptive right burden on the talc interest. In light of these facts, Meridian asserts, separate corporate identities should not be maintained. (We note, in passing, that points numbered 7 and 9 pertain to the relationship between Nicor, Inc. and its subsidiaries, Minerals and Ventures. At issue here is the relationship only between Minerals and Ventures.)

Meridian contends that the District Court operated under the misunderstanding that, in order to justify disregard of the corporate entity, the evidence must show that Minerals and Ventures were one and the same. Meridian further argues that the District Court's findings (set out in the fact section of this opinion) merely reflect matters which can be arranged to create the appearance of separateness without infringing on the control of a subsidiary by a parent. Hence, it asserts, those facts should be given little weight in determining the applicability of the equitable identity

- 11 -

theory. Meridian cites § 3-2-204(5), MCA, as the standard of review supporting its position that equity regards the totality of the circumstances, and will permit piercing of the veil without imposition of strict checklists:

> In equity cases and in matters and proceedings of an equitable nature, the supreme court shall review all questions of fact arising upon the evidence presented in the record, whether the same be presented by specifications of particulars in which the evidence is alleged to be insufficient or not, and determine the same, as well as questions of law, unless for good cause a new trial or the taking of further evidence in the court below be ordered. Nothing herein shall be construed to abridge in any manner the powers of the supreme court in other cases.

While § 3-2-204(5), MCA, provides the applicable standard of review, it does not, as Meridian advocates, entitle Meridian to a de novo review of the evidence. This Court's function in reviewing findings of fact in a civil action tried by a district court without a jury is not to substitute its judgment in place of the trier of facts but rather it is confined to determining whether the findings of fact are clearly erroneous. Rule 52(a), M.R.Civ.P. Although conflicts may exist in the evidence presented, it is the duty and function of the trial judge to resolve such conflicts. His findings will not be disturbed on appeal where they are based on substantial though conflicting evidence. Olson v. Westfork Properties, Inc. (1976), 171 Mont. 154, 557 P.2d 821; Bender v. Bender (1965), 144 Mont. 470, 397 P.2d 957.

Further, there is a presumption when this Court reviews the evidence, that the trial court's judgment is correct, and that any conflicting evidence must be resolved in favor of the ruling:

> Although this is an equity case and this court is bound to review all questions of law and fact raised on appeal,. . . nevertheless we are guided

in our review by certain presumptions and rules of law. First, in entering upon a review of the evidence on appeal, this court indulges the presumption that the judgment of the trial court is correct, and will draw every legitimate inference therefrom to support the presumption. (Citation omitted.) Second, it is the trial court's office to resolve inconsistencies in the testimony, and where the evidence, fully considered, furnishes reasonable grounds for different conclusions, the findings of the trial court will not be disturbed.

Havre Irrigation v. Majerus (1957), 132 Mont. 410, 414, 318 P.2d 1076, 1078.

Not only must conflicting evidence be resolved in favor of the District Court's ruling, but Meridian must shoulder the burden of proving that the evidence preponderates against the finding. Thomas v. Ball (1923), 66 Mont. 161, 213 P. 597. Hence, to pierce the corporate veil Meridian is obligated to prove that Minerals and Ventures had no separate identity and that the corporate form was used as subterfuge to defeat a public convenience, justify a wrong or to perpetrate a fraud.

Central to addressing the issue of whether there are separate identities is the fact that Minerals was not a participant to the venture agreement. As defined by the agreement, a "participant" meant the people or entities that from time to time had "participating interests." A "participating interest" meant the percentage interest representing the operating ownership interest of a participant in the assets and other rights and obligations under the agreement. The agreement stated that the "participants" were Meridian and Ventures, each holding a participating interest of 50%. Clearly, under these definitions neither Nicor, Inc. nor Minerals were participants bound by the contract.

There is no precise formula used to determine if a corporation is the alter-ego of its shareholder. However, in Comment, Piercing the Corporate Veil in Montana (1983), 44 Mont.L.Rev. 91, 95-97, the author identified the fourteen factors which this Court has relied on in past decisions:

1. Whether the shareholder owns all or most of the corporation's stock.

2. Whether the shareholder is a director and/or the president of the corporation.

3. Whether the shareholder makes all corporate decisions without consulting the other directors or officers.

4. Whether the shareholder, officers and/or directors fail to comply with the statutory requirements regarding operation of the corporation.

5. Whether the shareholder's personal funds are commingled with the corporation's funds.

6. Whether the shareholder's personal credit and corporation's credit are used interchangeably to obtain personal and corporate loans.

7. Whether the shareholder's personal business records are not kept separate from corporation's business records.

8. Whether the shareholder and corporation engage in the same type of business.

9. Whether the shareholder and corporation have the same address which is the address of shareholder's personal residence.

10. Whether the shareholder admits to third parties that the shareholder and the corporation are one and the same.

11. Whether the corporation's profits and earnings are distributed through means other than dividends.

12. Whether the corporation is undercapitalized.

13. Whether the parent and subsidiary have the same name.

14. Whether the parent and subsidiary have the same directors and officers.

The District Court did not strictly adhere to this formula but nonetheless made eleven specific findings of fact which supported its ultimate finding that Minerals and Ventures were separate and distinct corporations. These findings are listed in the statement of facts portion of this Opinion.

The trial court examined the evidence listed by Meridian and concluded that the evidence did not establish a commonality of interests between Minerals and Ventures sufficient to justify disregard of their corporate separateness. This Court is bound to uphold the trial court where its findings are not clearly erroneous. Rule 52(a), M.R.Civ.P.

Second, Meridian's argument fails because it claims that because Minerals was the sole shareholder of Ventures, it exercised complete control over Ventures.

Under Montana law, control over a corporation by a single shareholder is not, by itself, enough to warrant piercing the corporate veil. State ex rel. Monarch First Ins. Co. v. Holmes (1942), 113 Mont. 303, 308-309, 124 P.2d 994, 996.

> A mere showing that one corporation is owned by another, or that the two share interlocking officers or directors is insufficient to support a finding of alter ego.

Bonanza Hotel Gift Shop, Inc. v. Bonanza No. 2 (Nev. 1979), 596 P.2d 227, 229.

> Before the corporate cloak will be disregarded "it must appear not only that the corporation is controlled and influenced by one or a few persons,

but, in addition, it is necessary to demonstrate that the corporate cloak is utilized as a subterfuge to defeat public convenience, to justify wrong, or to perpetrate fraud."

State ex rel. Monarch Fire Insurance Co. v. Holmes (1942), 113 Mont. at 308, 124 P.2d at 996. See also ECA Environmental Management Services, Inc. v. Toenyes (Mont. 1984), 679 P.2d 213, 41 St.Rep. 388.

[O]rganization of one company by another, or ownership of all stock of one company by another, or common officers and directors, or all these elements combined, are not sufficient to defeat separate corporate entity.

Gillis v. Jenkins Petroleum Process Co. (9th Cir. 1936), 84 F.2d 74, 79.

We also note that Meridian failed to assert at trial that the corporate form had been used for some subterfuge. In the entire trial, the only "wrongful" conduct asserted by Meridian was that Minerals fashioned the Costain transaction as a merger in order to avoid the preemptive right clause. As the District Court did not find this conduct wrongful, Meridian failed to prove the second of the necessary elements justifying piercing the veil.

Meridian's second assertion is that the District Court failed to construe properly the qualifying phrase "expressly including a transfer of an interest effected by a transfer of stock" in the venture agreement. Meridian asserts that this phrase means only one thing: that no interest in the venture agreement could be transferred to a third party, in avoidance of the preemptive right, by conveying to a third party the stock of the corporation which owned the interest. Meridian argued, using parol evidence, that the language was intended to apply the preemptive right provision to transfers by parent corporations. They argue that this intent should have

been obvious given the circumstance where both of the signatory corporations were wholly-owned subsidiaries of corporate parents. They assert that the model form's preemptive right provided little security because it was easily circumvented by passing the transfer of one corporation up the line. Their solution for this problem was to add a qualifying phrase which did not specify who was bound, but what was covered: any transfer, even one accomplished through a transfer of stock.

Minerals and Costain respond, and we agree, that Meridian's argument attempts to create ambiguity where none exists. The unambiguous language of Section 15.3 requires a transfer by a "participant" to trigger the preemptive rights provision. Further, the unambiguous language of other sections of the agreement, Sections 1.17, 1.18 and 6.1 provide that the only "participants" to the agreement were Ventures and Meridian. Meridian's witnesses admitted that Section 15.3 explicitly applied only to transfers of stock by participants. Thus, the agreement cannot be construed as expressing a contractual intent to expand the preemptive right to transfers by Venture's corporate parent.

As its third issue, Meridian asserts that the only reason Minerals fashioned the Costain transaction as a merger was to avoid the preemptive rights clause. Hence, it argues, the merger was a sham and should be disregarded in equity. Our conclusion is that Minerals was not a participant to the venture agreement and our holding is that the findings of sufficient corporate separateness are not clearly erroneous. We uphold the District Court's refusal to pierce the corporate veil which negates the need for this Court to address the issues relating to the merger.

The venture agreement designated Ventures as operator, the entity responsible for the venture. Section 8.4 of the

agreement recites circumstances under which the operator is deemed to have resigned. Section 8.4(h) provides that a participant resigns when "the participant acting as an operator transfers its interests in the venture and in the properties to a third party that is not an affiliate." Meridian contends that the Minerals-Costain merger was a transfer under Section 8.4 and that the District Court should have found that Ventures was deemed to have resigned as operator.

Meridian's argument fails for the simple reason that neither Costain nor Minerals were participants acting as operator. Ventures was the only participant acting as an operator and it did not transfer its interests in the venture or in the properties. Hence, the plain language of the deemed offer provision was inapplicable under the circumstances.

Affirmed.

_John L. Sheehy_
Justice

We Concur:

_J. A. Turnage_
Chief Justice

_John Conway Harrison_

_Fred J. Weber_

_L. C. Gulbrandson_

_William E. Hunt_

_R. C. McDonough_
Justices

- 18 -