No. 88-564

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

GAR L. AMUNDSON,

　　　　　Plaintiff and Respondent,

　　-vs-

RICHARD A. WORTMAN,

　　　　　Defendant and Appellant.

APPEAL FROM: District Court of the Eighteenth Judicial District,
In and for the County of Gallatin,
The Honorable Joseph B. Gary, Judge presiding.

COUNSEL OF RECORD:

　　　For Appellant:

　　　　　Morrow, Sedivy & Bennett, P.C.; Lyman H. Bennett, III,
and Terry Schaplow, Bozeman, Montana

　　　For Respondent:

　　　　　Drysdale, McLean, Nellen & Nellen; Richard C. Nellen,
Bozeman, Montana

Submitted on Briefs: June 8, 1989

Decided: July 18, 1989

Filed:

Clerk

Mr. Justice R. C. McDonough delivered the Opinion of the Court.

This is an appeal from an action for breach of a contract to buy a business. Defendant Richard A. Wortman appeals from the judgment of the District Court of the Eighteenth Judicial District, Gallatin County, finding him in breach of the contract and awarding the balance of the purchase price, plus interest, to plaintiff Gar L. Amundson. We affirm on the substantive issues regarding the breach, but remand for further proceedings.

Wortman presents three issues for review:

1. Did the District Court err in failing to find the existence of constructive fraud?

2. Did the District Court err in equating "customer lists" with "mailing lists"?

3. Did the District Court err in awarding attorney's fees without holding an evidentiary hearing?

Amundson was the proprietor of a business called Information Processing in Bozeman, Montana. Information Processing produced a product known as the Direct School Marketing Program, a series of computer-generated booklets designed to list the names, addresses and telephone numbers of school officials, faculty and coaches, together with dates and locations of various conferences and student events taking place during a given season or school year. The booklets were sold to businesses--chiefly in the lodging and restaurant industries--interested in making contact with the listed officials in order to obtain their patronage during a conference or event. Information Processing also offered a follow-up service, which involved putting its subscribers in touch with school officials by mail. Amundson set up the

2

business himself, which included writing the computer program that compiled the booklet.

In 1987, Wortman approached Amundson with a proposal to buy the Direct School Marketing Program. While negotiating terms of the sale, Amundson made various representations to Wortman concerning subjects such as projected earnings from the program, the costs involved and opportunities for new business. Pursuant to these negotiations, Wortman drew up a contract in longhand. Amundson read the contract and prepared a typed version. The contract was executed on April 7, 1987. The price for the business was $18,000, to be paid with a $2,000 down payment and two annual installments of $8,000.

Among other provisions, the contract called for Amundson to deliver to Wortman the computer equipment, software and other items listed in an appendix to the contract, as well as the copyright and logo for the Direct School Marketing Program and all documents related to its course of business. Amundson was also to provide Wortman with "whatever assistance is deemed necessary" in the preparation, marketing and distribution of the Fall 1987 edition of the program. The contract called for Wortman to pursue the business in a diligent, businessman-like manner, and pay all expenses of doing business.

Wortman began operating the business, but was dissatisfied with the results of his efforts. He sought to rescind the contract and return the business, but Amundson did not agree to the rescission. Wortman did not pay his first installment. On September 17, 1987, Amundson made a written demand through his attorney for payment of the installment. When Wortman did not do so, Amundson filed this action on October 21, 1987. The complaint sought payment of "all monies owing now or in the future" under the contract, or

3

return of the business and damages for waste due to Wortman's actions in running it. Wortman raised an affirmative defense, alleging that Amundson had made several misrepresentations during negotiation of the sale that amounted to constructive fraud and entitled him to rescission.

The case was tried before the District Court, sitting without a jury. On August 10, 1988, the court issued its Findings of Fact and Conclusions of Law with Memorandum, in which Wortman was adjudged to be in breach of the contract. Judgment was entered awarding Amundson the balance of the contract price plus interest, together with attorney's fees and costs, and Amundson's attorney filed a Notice of Judgment. This appeal followed.

I.

On appeal, Wortman challenges the District Court's Findings of Fact. When reviewing the findings of fact in a civil action tried by a district court without a jury, this Court will not substitute its judgment for that of the trier of fact. Rather, our review is confined to determining whether the findings of fact are clearly erroneous. Although the evidence may conflict, the court's findings will be presumed correct if supported by substantial evidence. Meridian Minerals Co. v. Nicor Minerals, Inc. (Mont. 1987), 742 P.2d 456, 461, 44 St.Rep. 1516, 1523-24.

The District Court's Findings of Fact relevant to Wortman's appeal read as follows:

> 12. That the Montana Supreme Court discusses constructive fraud in the case of Moschelle v. Hulse, 622 P.2d 155 (Mont. 1980). The Court spoke in terms of "a pattern of repeated concealments of the true state of affairs" and "withholding relevant facts," all of which created a false impression to the purchaser.
> 13. That the Court does not find constructive fraud by the seller to the buyer.

4

14. That the evidence did not show that past profits of the Plaintiff were falsely stated, that he made repeated concealments in promoting the business sale, that an intentional lack of full disclosure created a false impression, or that there was deliberate misleading of the facts which crossed the threshold of "puffing" and entered the realm of constructive fraud.

15. That the Court finds a customer list was provided, but any mailing list undergoes a constant rollover, and use of such a list in a business requires aggressive and continual updating.

16. That a sales person leaving the employment upon the sale of a business is not reason to invoke constructive fraud.

17. That the Contract was very vague regarding what "assistance" was to be provided by the seller, and compelling evidence has not been presented to this Court justifying a lack of assistance to the point of constructive fraud.

Wortman argues that the court's Finding of Fact No. 13 was in error and contrary to the evidence in this case. Wortman also argues that the court confused "customer lists" with "mailing lists", which rendered its Finding of Fact No. 15 erroneous.

Constructive fraud is defined at § 28-2-406, MCA, as

any breach of duty which, without an actually fraudulent intent, gains an advantage to the person in fault or anyone claiming under him by misleading another to his prejudice or to the prejudice of anyone claiming under him ...

In cases such as the one at bar, the "duty" involved is the duty to disclose material facts to the purchaser, a breach of which is an essential element of constructive fraud. Mends v. Dykstra (1981), 195 Mont. 440, 637 P.2d 502. The Mends case addressed the issue of when such a duty arises. While the defendants in Mends asserted that no duty arose absent a fiduciary or confidential relationship, it was pointed out that this Court had found "special circumstances" surrounding

5

some transactions which give rise to the duty to disclose. One such set of circumstances was the "pattern of repeated concealments" found in the Moschelle case cited by Wortman in support of his position and included in the District Court's Findings of Fact quoted above.

Wortman argues that Amundson repeatedly concealed the true state of affairs concerning the business. According to Wortman, Amundson failed or refused to provide business records detailing the financial history of the business and did not disclose important details concerning its current status. Wortman thus asserts that his negotiations with Amundson created a false impression about the desirability of purchasing the Direct School Marketing Program. We disagree.

The business records Wortman complains of are ledgers and tax records for the years preceding the purchase. He argues that he was unable to gauge the true performance of the business without them, and was forced to rely on representations Amundson made in income projections prepared during their negotiations. Wortman also argues that the projections presented an inflated notion of the profit that could be made selling booklets.

Both sides introduced income projections into evidence. According to testimony by Amundson, as many as five or six such projections were prepared for various possible approaches Wortman might take in operating the business. Amundson also testified that the figures for such things as materials costs, labor and net profit per booklet were based on the past performance of the business. The projections introduced at trial as Wortman's Exhibit "A" include a statement of annual net profit for the years Amundson ran the business, which Amundson testified he had taken from the ledgers at issue. The projections state net profit forecasts that closely approximate the actual figures from past operation,

6

although some projected profits are actually <u>lower</u> than past performance. Amundson also testified that Wortman never requested tax records during negotiations.

Wortman complains that Amundson also concealed facts about the status of the business that worked to Wortman's detriment. After the contract had been executed, Amundson and Wortman met with Amundson's salesman, Tim Barrett, in Butte to go over Barrett's role in the business. At this meeting, Barrett informed Wortman that he would be quitting his job to pursue other business interests. Wortman alleges that Amundson knew this before the meeting and concealed it, leading Wortman to believe that he was buying a business employing an active salesman.

The testimony cited by Wortman on this point bears examination. Barrett testified that he did in fact tell Amundson of his decision to quit prior to the meeting. However, Barrett said, "I believe I told Mr. Amundson the day he called me and he said he had sold the business ...." This testimony indicates that Amundson did not know of Barrett's departure until <u>after</u> the sale was consumated. He therefore could not have concealed it to Wortman's detriment in deciding on the purchase. Furthermore, Wortman himself testified that the presence or absence of a hired salesman was not crucial to his plan for operating the business.

Wortman also complained that Amundson did not disclose the "considerable ill will" he had generated among his customers, or their complaints that the booklets were ineffective. However, Wortman testified that the sluggish sales he experienced could have been the result of his own shortcomings as a salesman. Wortman's Exhibit "I", a file folder containing returned sales letters introduced in support of his contention of customer animosity does not lend support to his claim. The file contains 12 letters sent out by Wortman

and later returned. On one of the envelopes is written "not interested," but the other 11 were returned because the addressee had moved. The only letter actually written by a customer states that the booklet previously purchased "helped a great deal" and asks that the customer be retained on Wortman's mailing list. When testifying about the letters, Wortman admitted that the drop in sales could have been attributed to other causes, such as a generally slow business climate.

Still another of Wortman's claims was that Amundson failed to supply assistance with business operations that he promised during negotiations and in the contract itself. In response, Amundson testified that he had volunteered assistance, and supplied a record of his activities.

While the examples above do not address every claimed concealment, they are sufficient to illustrate that evidence in this case supports the District Court's conclusion that constructive fraud was not present. We have found no "pattern of repeated concealments" in the record, and affirm the District Court on this issue.

Wortman's second challenge concerns "mailing lists" versus "customer lists". One of the items purchased by Wortman as part of the business was a "customer list" compiled over the course of the Direct School Marketing Program's existence. Wortman's brief to this Court makes much of the definition of "customer" as one who repeatedly makes purchases or has business dealings with a tradesman.

According to Wortman, the list supplied was a misrepresentation, because he was able to make only approximately 80 sales to over 300 listed "customers". At trial, Amundson testified as to how the list was compiled. According to Amundson, businesses were placed on the list when they purchased a booklet. Entries were also made for each purchaser

indicating such things as method of payment. The names on the list were thus "customers" in that each business had made at least one purchase. While nearly every business strives for repeat customers, there is no guarantee that a customer with an established record of repeated purchases will not take his business elsewhere or simply stop purchasing for any number of reasons. We also see nothing in the record to indicate that Amundson made such a guarantee to Wortman. The manner in which the list was referred to was thus irrelevant, and we affirm the court on this issue.

## II.

Wortman challenges the District Court's award of attorney's fees, arguing that it did so on the basis of the affidavit of Amundson's counsel as to the amount of such fees, without holding an evidentiary hearing. Wortman is correct in that attorney's fees cannot be awarded solely on the basis of an attorney's affidavit. An evidentiary hearing is required. Stark v. Borner (Mont. 1988), 762 P.2d 857, 860, 45 St.Rep. 1885, 1888.

Wortman's argument has placed this Court in an unusual situation. When the District Court entered its Findings of Fact and Conclusions of Law with Memorandum, counsel for Amundson was instructed to draft a judgment in conformity with the court's ruling. Part of that ruling, and consequently part of the "Judgment" signed and filed by the court, was an award of "reasonable attorney's fees and costs, which shall be determined at a separate hearing." Shortly after the "Judgment" was filed and noticed, but before the time for the hearing, counsel for Wortman filed his Notice of Appeal.

The problem arises because counsel for Wortman filed his Notice of Appeal prematurely. A judgment that awards costs and attorney's fees to be determined at a later hearing is not final and appealable until those costs and fees are

9

determined.  Boles v. Ler (1984), 213 Mont. 265, 692 P.2d 1. However, neither party raised this issue in their briefs, and it only became apparent upon our review of the record, after all briefs had been filed and the record deposited with this Court.  Therefore, in the interests of judicial economy, and for the purposes of this case only, we affirm the decision of the District Court on the issues discussed above, and remand the cause to the court for proper determination of costs and attorney's fees, both at the District Court level and upon appeal.

Affirmed and remanded.

_____
Justice

We Concur:

_____

_____

_____

_____
Justices

10