No. 00-572

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 287N

ENVIRONMENTAL CONTRACTORS, LLC.,

Plaintiff and Respondent,

v.

WINFIELD MOON, SR.,

Defendant and Appellant.

APPEAL FROM:     District Court of the Thirteenth Judicial District,
                 In and for the County of Yellowstone,
                 The Honorable G. Todd Baugh, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

                M. Dayle Jeffs, Rodney W. Rivers, Jeffs & Jeffs, Provo, Utah; Kenneth D.
                Peterson, Peterson and Schofield, Billings, Montana

        For Respondent:

                (No Respondent's Brief filed)

                                                Submitted on Briefs:  August 2, 2001

                                                Decided:  December 10, 2002

Filed:

        _____
                          Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2 Winfield Moon, Sr. (Moon), appeals a Supplemental Judgment of the District Court for the Thirteenth Judicial District, Yellowstone County, awarding additional attorney's fees to Environmental Contractors, LLC. (EC), in a dispute involving the dismantling of the Frank Bird Power Plant in Billings. We reverse and remand for an evidentiary hearing.

¶3 We address the following issue on appeal: Did the District Court err when it awarded additional attorney's fees to EC?

**Factual and Procedural Background**

¶4 On July 24, 1996, Moon entered into a contract with the Montana Power Company (MPC) to dismantle and remove equipment from the Frank Bird Power Plant in Billings. Part of the contract required MPC to pay the general contractor on the project $800,000 for asbestos removal while the plant was being demolished and salvaged.

¶5 Moon entered into a contract with EC on September 5, 1996, designating EC as the general contractor on the project. This contract required Moon to hire a demolition contractor by a specific date, but he failed to do so. Consequently, under the terms of this

2

contract, EC became the demolition contractor for which EC was to receive payment for the cost of the work plus a 10% contractor's fee.

¶6 An escrow agreement on the project required Moon to deposit into an escrow account the funds necessary to pay the cost of the work. The funds were to be free and clear of any security interest, lien, encumbrance or claim. Moon deposited $1,000,000 into the escrow account and agreed to fund the account for any additional sums owing. Throughout the work on the plant, EC repeatedly advised Moon that the cost of the work would exceed the amount in the escrow account and that additional funds were necessary. The cost of the project, not including the asbestos removal, was $1,354,580.60. Moon paid EC $1,013,363.71 out of the escrow account, leaving a balance owing to EC of $332,544.15 which Moon agreed to pay, but never did.

¶7 On May 6, 1998, EC filed suit for the amount due under the contract. That same day, EC filed a Motion for Writ of Attachment on part of the equipment removed from the power plant. Moon filed his answer on July 6, 1998, claiming that EC was not entitled to any additional funds as $1,000,000 was the agreed price for the entire job.

¶8 Thereafter, EC filed a notice that it intended to take Moon's deposition. The deposition was to be videotaped and telephonic. The place for taking Moon's deposition was set to accommodate Moon, yet Moon failed to appear for the deposition. Consequently, EC moved for sanctions against Moon consisting of granting judgment in favor of EC. In addition, EC moved for attorney's fees and costs.

¶9 A bench trial in this matter was held on September 21, 1999. After hearing testimony

3

from both parties, the District Court took the matter under advisement and set a time for a hearing to determine the amount of attorney's fees to be awarded in the underlying case. Moon failed to appear at that hearing.

¶10 In its October 27, 1999 Final Judgment, the District Court awarded EC $332,544.15 on the contract claim, $55,141.79 in pre-judgment interest, and $32,099.05 in attorney's fees as the prevailing party in the action and as a sanction against Moon for failing to appear at various depositions and hearings throughout the proceedings. The court also awarded EC interest on the total judgment award of $419,784.99 at 10% per annum from the date of the judgment until that amount is paid in full, as well as reasonable attorney's fees and costs that EC may incur in collecting those amounts. Moon did not appeal this judgment.

¶11 On April 19, 2000, EC moved for supplemental attorney's fees and costs incurred in its attempt to collect on the original judgment from Moon. In its June 9, 2000 Supplemental Judgment, the District Court granted EC's motion and awarded EC attorney's fees and costs in the amount of $91,247.29. Moon now appeals the District Court's Supplemental Judgment.

**Standard of Review**

¶12 Determining what constitutes reasonable attorney's fees is a discretionary task for the District Court and this Court will not disturb its judgment in the absence of an abuse of that discretion. *Majers v. Shining Mountains* (1988), 230 Mont. 373, 380, 750 P.2d 449, 453 (citing *Talmage v. Gruss* (1983), 202 Mont. 410, 412, 658 P.2d 419, 420; *Carkeek v. Ayer* (1980), 188 Mont. 345, 347, 613 P.2d 1013, 1015).

4

**Discussion**

¶13  *Did the District Court err when it awarded additional attorney's fees to EC?*

¶14  Moon makes several arguments in support of his contention that the District Court erred in awarding supplemental attorney's fees to EC. First, he argues that the court erred in awarding attorney's fees without contractual or statutory authority. Second, he argues that the court erred in awarding attorney's fees without holding an evidentiary hearing on the reasonableness of the attorney's fees. And, third, he argues that the court erred in awarding attorney's fees against Moon for collection efforts against Westco Energy, Inc. (Westco), the company that Moon contends now owns the equipment from the power plant.

¶15  As to Moon's first contention, he is correct that Montana law only allows attorney's fees when authorized by statute or contract. "The measure and mode of compensation of attorneys and counselors at law is left to agreement, express or implied, of the parties. . . ." Section 25-10-301, MCA. "Attorney fees are awardable only where statute or contract provides for their recovery." *Northwestern Nat'l Bank v. Weaver-Maxwell, Inc.* (1986), 224 Mont. 33, 44, 729 P.2d 1258, 1264 (citations omitted).

¶16  However, in Montana, the contractual right to attorney's fees is treated as reciprocal:

> Whenever, by virtue of the provisions of any contract or obligation in the nature of a contract made and entered into at any time after July 1, 1971, one party to such contract or obligation has an express right to recover attorney fees from any other party to the contract or obligation in the event the party having that right shall bring an action upon the contract or obligation, then in any action on such contract or obligation *all parties to the contract or obligation shall be deemed to have the same right to recover attorney fees* and the prevailing party in any such action, whether by virtue of the express contractual right or by virtue of this section, shall be entitled to recover his

5

reasonable attorney fees from the losing party or parties. [Emphasis added.] Section 28-3-704, MCA; *Majers*, 230 Mont. at 381, 750 P.2d at 454. In this case, the "General Conditions" contract between Moon and EC provided at § 3.18.1 and § 9.10.2, that Moon could recover attorney's fees under certain conditions. Therefore, because attorney's fees are reciprocal in Montana, EC is entitled to its attorney's fees as the prevailing party.

¶17 More importantly, however, Moon did not appeal the District Court's October 27, 1999 Final Judgment awarding attorney's fees and costs to EC. "An appellant has a duty to perfect an appeal in the manner and within the time limits provided by law. Absent such compliance, this Court does not acquire jurisdiction to entertain and determine an appeal." *First Security Bank v. Harmon* (1992), 255 Mont. 168, 172, 841 P.2d 521, 524 (citations omitted). Consequently, Moon cannot now complain that the original award was improper or that it lacked the requisite foundation for an award of attorney's fees. Nor can Moon argue that it is improper for the District Court to award supplemental attorney's fees to EC because the judgment that Moon failed to appeal provided that EC was to receive its reasonable attorney's fees and costs that EC may incur in collecting the amounts awarded in the Final Judgment.

¶18 As to Moon's second contention, that the District Court erred in awarding supplemental attorney's fees without holding an evidentiary hearing on the reasonableness of those fees, we agree. While the District Court did hold a hearing on whether EC was entitled to supplemental attorney's fees, the court did not conduct an evidentiary hearing on the reasonableness of those fees. Moon was not given the opportunity to present evidence or to

cross-examine witnesses regarding the claimed attorney's fees. All the court had before it in making its determination was EC's affidavit regarding those fees.

¶19 This Court has consistently held that "attorney's fees cannot be awarded solely on the basis of an attorney's affidavit. An evidentiary hearing is required." *Amundson v. Wortman* (1989), 238 Mont. 207, 213, 777 P.2d 315, 319 (citations omitted). Moreover, we have stated:

> Before granting attorney's fees, a district court must hold an evidentiary hearing to determine the reasonableness of the requested fees. Evidence elicited through oral testimony, cross examination, and the introduction of exhibits is competent evidence upon which an attorney's fee award can be based.

*Glaspey v. Workman* (1988), 234 Mont. 374, 377-78, 763 P.2d 666, 668 (citation omitted). *See also State Dept. of Highways v. Helehan* (1980), 189 Mont. 339, 346, 615 P.2d 925, 929 ("The rule in this State is that an award of attorney fees must be based on a hearing allowing for oral testimony, the introduction of exhibits, and the opportunity to a responsible party to cross-examine the reasonableness of the attorney fees claimed.").

¶20 In the case *sub judice*, while Moon did not object to the total amount of the fees requested by EC, he did question whether those fees were incurred in collection efforts against himself or against Westco. Further, Moon points out that in *Stark v. Borner* (1988), 234 Mont. 254, 258, 762 P.2d 857, 860, the defendants "did not object or otherwise respond to the affidavit" of attorney's fees, yet we held that it was improper to award attorney's fees solely on the affidavit of counsel without holding an evidentiary hearing in the matter. Analogously, even though Moon did not object to the "amount" of the attorney's fees

7

requested by EC, we reverse and remand for an evidentiary hearing, since none was held in this case regarding the reasonableness of the supplemental attorney's fees.

¶21    Finally, Moon contends that the District Court erred in awarding attorney's fees against him for collection actions taken against Westco.  To that end, Moon asserts that the majority of the fees awarded in the Supplemental Judgment was incurred by EC in litigation initiated and carried on by Westco.  Moon further contends that EC has never brought an action against Moon to set aside the transfer to Westco, nor has any court made a determination that the transfer of the equipment to Westco was a fraudulent transfer.  In evaluating this argument, it is necessary to set out some additional facts.

¶22    On May 8, 1998, the District Court issued a Writ of Attachment on a portion of the equipment salvaged from the Frank Bird Power Plant until such time as Moon deposited the amount of EC's demand with the Sheriff of Yellowstone County or provided sufficient sureties.  As a result of the District Court's October 27, 1999 judgment in favor of EC, EC attempted to sell the equipment to satisfy the judgment.  However, Moon claimed that the sale could not take place because he had already sold the equipment in question to Westco.

¶23    When EC learned that Westco filed a petition for Chapter 11 bankruptcy in the United States Bankruptcy Court for the District of Massachusetts, EC moved to transfer the case to Montana.  Although the Massachusetts Bankruptcy Court determined that venue was also proper in Massachusetts, that court transferred the case to the United States District Court for the District of Montana because that is where the "important assets are located."  In transferring the case, the Bankruptcy Judge for the District of Massachusetts called Westco's

8

actions a "multistate shell game" and stated that this case was "one of the strongest bad faith cases that I've seen on the bench . . . ."

¶24    Eventually the case was transferred to the United States Bankruptcy Court for the District of Montana.  In its March 29, 2000 Order, the Montana Bankruptcy Court modified the automatic stay afforded by the Bankruptcy Code to permit EC to pursue its non-bankruptcy remedies regarding the power plant equipment.  The Montana Bankruptcy Court voiced its agreement with the Massachusetts Bankruptcy Court regarding bad faith on behalf of Westco stating that the bankruptcy proceedings were filed on behalf of Westco "solely to invoke the automatic stay to frustrate and delay EC's liquidation efforts."

¶25    Shortly after this Order by the Montana Bankruptcy Court, EC attempted to proceed with its State court remedies, however, Westco filed a Motion to Intervene "in order to defend its ownership interest."  On June 7, 2000, the District Court for Yellowstone County entered an Order of Sale regarding the power plant equipment.  The court determined that EC's judgment and pre-judgment attachment constituted a first and prior lien upon the equipment which was superior to any claim on the equipment by Moon or Westco.  Referencing the Order of the  Montana Bankruptcy Court, the District Court determined that the power plant equipment was, at all times relevant to these proceedings, owned by Moon and that the equipment should be sold at public auction to satisfy EC's judgment.

¶26    Hence, although the Massachusetts and Montana Bankruptcy Courts determined that Westco was acting in bad faith in filing bankruptcy proceedings in order to frustrate and delay EC's liquidation efforts and the Montana District Court determined that throughout

9

these proceedings the power plant equipment was owned by Moon, Moon is correct that none of these courts have established that Moon and Westco are one and the same or that Moon manipulated the actions of Westco to hinder the collection efforts of EC. Without such a determination we are unable to evaluate whether the District Court abused its discretion in attributing all of the attorney's fees requested by EC, which included attorney's fees incurred in the bankruptcy proceedings, to Moon. However, since we are remanding this case to the District Court for an evidentiary hearing on the reasonableness of the attorney's fees, we instruct the District Court to also determine to what extent the attorney's fees are attributable to Moon either through actions against Moon individually or, if the court determines that Moon and Westco are one and the same, through actions against Westco.

¶27 Reversed and remanded for an evidentiary hearing.

/S/ JAMES C. NELSON

We Concur:

/S/ PATRICIA COTTER
/S/ JIM REGNIER
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE