**TOWE ANTIQUE FORD FOUNDATION, a Nonprofit Montana Corporation, Plaintiff–Appellant,**

v.

**INTERNAL REVENUE SERVICE; Department of Treasury; United States of America, Defendants–Appellees.**

No. 92–35317.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 6, 1993.

Decided July 22, 1993.

Gerald Murphy, Moulton, Billingham, Longo & Mather, Billings, MT, for plaintiff-appellant; Thomas E. Towe, Towe, Ball, Enright & Mackey, Billings, MT (appearance only).

Frank P. Cihlar, U.S. Dept. of Justice, Tax Div., Washington, DC, for defendants-appellees.

Before: SKOPIL, ALARCON and BEEZER, Circuit Judges.

ALARCON, Circuit Judge:

Plaintiff–Appellant Towe Antique Ford Foundation ("TAFF"), a nonprofit charitable corporation incorporated under Montana law, appeals from the judgment in favor of the United States in this wrongful levy action brought pursuant to 26 U.S.C. § 7426.

TAFF contends that reversal is compelled because the district court erred prejudicially in making the following rulings: 1) TAFF was the alter ego of Towe; 2) the alter ego doctrine was applicable although the Government did not offer any evidence to support a finding that Towe used TAFF to perpetrate fraud; 3) TAFF's attorney, Thomas Towe, could not testify at trial; 4) the levy on the cars without a prior hearing did not violate the Fifth Amendment's guarantee of due process; 5) denial of TAFF's request for a jury trial; 6) TAFF was the nominee of Towe; 7) the United States' fraudulent conveyance defense was not barred by the three year statute of limitations contained in 28 U.S.C. § 2415(b); 8) Towe's alleged transfer of the cars to TAFF was a fraudulent conveyance; and 9) the United States could use fraudulent conveyance as a defense at trial even though it did not initially plead it as a defense in its answer to TAFF's complaint. We affirm the judgment upholding the levy because we conclude that the district court did not clearly err in determining that TAFF is the alter ego of Towe. We do not reach TAFF's contentions pertaining to the district court's findings that TAFF was the nominee of Towe and that the automobiles were fraudu-

lently conveyed. We also determine that TAFF's remaining contentions are without merit.

## I.

TAFF brought a wrongful levy action against the United States pursuant to 26 U.S.C. § 7426.[1] TAFF alleged that on or about July 31, 1989, the United States levied on 91 antique automobiles located in Sacramento, California and Deer Lodge, Montana in an attempt to satisfy the delinquent federal income tax liabilities of Edward Towe and his wife, Florence. Thirty-one of the cars were displayed in the Towe Ford Museum in Deer Lodge, Montana. The museum was operated by Powell County Museum and Arts Foundation ("PCMAF"). Sixty of the automobiles were displayed in the Towe Ford Museum in Sacramento, California. This museum is operated by the California Vehicle Foundation ("CVF"). The automobiles were registered in the name of TAFF.

In the district court, the United States disputed TAFF's claim to ownership of the cars on four discrete theories. Towe owned the cars at the time of the levy because he had not effected a valid transfer of the cars to TAFF. The levy was proper because TAFF was Towe's alter ego. TAFF was Towe's nominee. The purported conveyance of the automobiles should be disregarded because it was fraudulent.

After a bench trial, the district court entered judgment for the United States. The district court stated that "[a] large part of [TAFF's] case relies in whole or in part on the testimony of Edward Towe and on documents prepared by him." The district court found that much of Towe's testimony lacked credibility. The district court based its credibility finding on the fact that Towe had a conflict of interest because he was both the taxpayer and the president and a director of TAFF, Towe's testimony was internally in-

consistent, as well as his demeanor on the witness stand.

The court concluded that the United States' levy on the automobiles was justified because TAFF was the alter ego of Towe. Alternatively, the court determined that TAFF was the nominee of Towe and that the alleged conveyance of the cars was fraudulent under Montana's Uniform Fraudulent Conveyance Act. The district court reserved judgment on whether Towe had effected a valid transfer of the cars to TAFF because such a finding was not "critical to the outcome in this matter."

## II.

■ Ordinarily, courts are called upon to apply the alter ego doctrine in cases where a party seeks to hold an individual liable for a business entity's debts. *See Drilcon, Inc. v. Roil Energy Corp., Inc.,* 230 Mont. 166, 749 P.2d 1058, 1064 (1988) (holding shareholder liable for his corporation's contractual obligations using an alter ego theory of liability). Here, the United States used a "reverse piercing" theory. The United States attempted to reach the assets of a corporation, TAFF, in order to satisfy the tax debt owed by Towe.

The Montana Supreme Court has not had an occasion to use a reverse piercing theory to allow a creditor of an individual to reach the assets of a business entity that is his alter ego. However, other courts have permitted the use of a "reverse piercing" theory to allow the United States to recover a taxpayer's delinquent tax liability from his alter ego business entity. *See Century Hotels v. United States,* 952 F.2d 107, 110 (5th Cir. 1992) (stating that corporation that was alter ego of taxpayer could be liable for taxpayer's tax liability even though taxpayer had no ownership interest in the corporation); *Shades Ridge Holding Co., Inc. v. United States,* 888 F.2d 725, 728 (11th Cir.1989) (corporation that was alter ego of taxpayer was

---

1. A person claiming to be aggrieved because his property has been erroneously seized in satisfaction of a third-person's tax liability may bring a wrongful levy action pursuant to 26 U.S.C. § 7426. This action permits "any person (other than the person against whom is assessed the tax

out of which such levy arose) who claims an interest in or lien on such property" to bring an action seeking relief in the form of an injunction, recovery of the property, or recovery of the proceeds of the sale of the property. 26 U.S.C. § 7426(a)(1), (b)(1), (b)(2).

liable for taxpayer's debts even though the government did not prove that the taxpayer owned any of the corporation's stock), *cert. denied,* 494 U.S. 1027, 110 S.Ct. 1472, 108 L.Ed.2d 609 (1990); *Loving Saviour Church v. United States,* 728 F.2d 1085, 1086 (8th Cir.1984) (unincorporated association that was alter ego of taxpayers is liable for taxpayers' delinquent tax liability); *Valley Finance, Inc. v. United States,* 629 F.2d 162, 172 (D.C.Cir.1980) (stating that a corporation was liable for the tax liability of its shareholder), *cert. denied,* 451 U.S. 1018, 101 S.Ct. 3007, 69 L.Ed.2d 389 (1981).

### III.

TAFF makes two contentions regarding the district court's finding that TAFF was the alter ego of Towe. TAFF first contends that the district court's finding that TAFF was the alter ego of Towe was clearly erroneous. TAFF also argues that the evidence was insufficient to show that TAFF was used to perpetrate fraud.

We apply the law of the forum state in determining whether a corporation is an alter ego of the taxpayer. *Wolfe v. United States,* 806 F.2d 1410, 1411 n. 3 (9th Cir.1986), *cert. denied,* 482 U.S. 927, 107 S.Ct. 3210, 96 L.Ed.2d 697 (1987). The parties do not dispute that Montana law is applicable. TAFF argues that we should review the district court's finding that TAFF was the alter ego of Towe *de novo.* We disagree. We have previously held that a district court's application of the alter ego doctrine is reviewed for clear error. *Wolfe v. United States,* 798 F.2d 1241, 1243 n. 2 (9th Cir.), *amended on other grounds,* 806 F.2d 1410 (9th Cir.1986), *cert. denied,* 482 U.S. 927, 107 S.Ct. 3210, 96 L.Ed.2d 697 (1987).

It is well settled that creditors can reach property which ostensibly belongs to a third party if that entity is the alter ego of the taxpayer. *Hando v. PPG Indus., Inc.,* 236 Mont. 493, 771 P.2d 956, 960 (1989). "Courts have not hesitated to ignore the fiction of separateness and approve a piercing of the corporate veil when the corporate device frustrates clear intendment of the law. The Government's inability otherwise to satisfy legitimate tax debts clearly may form a sound basis for such disregard of corporate form." *Valley Finance,* 629 F.2d at 171–72.

In Montana, "no concrete formula exists under which a court will disregard the separate identity of the corporate entity." *Hando,* 771 P.2d at 960. The factors relevant to a finding of alter ego include, but are not limited to:

1. Whether the individual is in a position of control or authority over the entity;

2. Whether the individual controls the entity's actions without need to consult others;

3. Whether the individual uses the entity to shield himself from personal liability;

4. Whether the individual uses the business entity for his or her own financial benefit;

5. Whether the individual mingles his own affairs in the affairs of the business entity;

6. Whether the individual uses the business entity to assume his own debts, or the debts of another, or whether the individual uses his own funds to pay the business entity's debts.

*See generally Hando,* 771 P.2d at 960; *Drilcon, Inc. v. Roil Energy Corp., Inc.,* 230 Mont. 166, 749 P.2d 1058, 1063–64 (1988); *Meridian Minerals Co. v. Nicor Minerals, Inc.,* 228 Mont. 274, 742 P.2d 456, 462 (1987); Jody J. Brewster, *Piercing the Corporate Veil in Montana,* 44 Mont.L.Rev. 91, 95–97 (1983); *see also Valley Finance,* 629 F.2d at 172–73.

Generally, Montana courts consider two factors in determining whether to disregard the separate identity of a corporation. First, the party seeking to pierce the corporate veil must show that the corporation is the alter ego of the individual. *Drilcon,* 749 P.2d at 1064. Second, "there must be a showing that the corporate entity was used as a subterfuge to defeat public convenience, justify wrong, or perpetrate fraud." *Id.* The Montana Supreme Court has emphasized, however, that

[p]iercing the corporate veil is an equitable remedy used to curb injustices resulting from the improper use of a corporate enti-

ty. Because the remedy is equitable, no concrete formula exists under which a court will disregard the separate identity of the corporate entity. Use of this remedy depends entirely upon the circumstances of each case.

*Hando,* 771 P.2d at 960; *see also Valley Finance,* 629 F.2d at 172 ("Given the diversity of corporate structures and the range of factual settings in which unjust or inequitable results are alleged, it is not surprising that no uniform standard exists for determining whether a corporation is simply the alter ego of its owners.... The test is a practical one, based largely on a reading of the particular factual circumstances.").

## IV.

TAFF contends that the district court erred in its finding that TAFF was the alter ego of Towe. We hold that the district court's finding is not clearly erroneous.

■ The district court found that: 1) Towe was the president of TAFF and the sole officer controlling day-to-day operations of TAFF; 2) that Towe dominates and controls the affairs of TAFF; 3) that Towe made substantial monetary contributions to TAFF; 4) that Towe mingled his own affairs and his family's affairs in the affairs of TAFF; and 5) that the transfer of the cars to TAFF was done in anticipation of federal tax liabilities.

■ These factual findings are not clearly erroneous. TAFF concedes on appeal that it "is undisputed" that Towe is in a position of authority at TAFF. The record supports the district court's finding that Towe controls the affairs of TAFF. For example, Edward Towe is the only person who knew when and how the automobiles were transferred from him to TAFF. Two other board members, Ernest Hartley and Andrew Towe, did not know how the cars initially came into TAFF's possession. TAFF attempts to explain this away by arguing that Hartley and Andrew Towe had no reason to know how the cars arrived at TAFF because they were not on TAFF's original board of directors. We disagree. In light of the fact that TAFF's raison d'etre is to maintain an antique car collection, it was reasonable for the trial

court to infer that independent board members would have acquainted themselves with the source of the corporation's assets. Second, for two years after Edward Towe allegedly transferred the automobiles to TAFF, Towe failed to tell Ernest Hartley, the museum director at PCMAF, to stop making rental payments out to Towe personally and begin making them to TAFF. Third, the board failed to meet or discuss a previous federal district court decision in which the court found that Edward Towe had used Grant Investments Fund ("GIF") for his own personal gain and that the district court had allowed some of GIF's assets to be seized by the IRS even though TAFF invested substantially in GIF. Fourth, Andrew Towe, a vice president and director of TAFF could not explain the circumstances that led TAFF to pay for the construction of a metal shop building for the benefit of Towe Farms, Inc. Andrew Towe's only explanation was that the construction was paid for by TAFF because "there is some sort of indebtedness owed there." Under these circumstances, the district court did not clearly err in finding that Towe had control over the affairs of TAFF.

■ The record also supports the district court's finding that Towe had intermingled his own and his family's affairs in TAFF. Edward Towe invested TAFF's assets in Grant Investments Fund. Towe then used the assets of GIF to discharge his own personal obligations. Further, Towe's association with TAFF has resulted in employment opportunities for three members of his family. His son, Andrew Towe, is the director of PCMAF's museum in Deer Lodge. His daughter, Kristin Towe Hartley, is an employee of Towe Antique Ford Shops. That entity operates in both of the museums where TAFF has its automobiles. Towe, on behalf of TAFF, reserved the right to operate retail shops in the museums. Towe's son-in-law, Ernest Hartley, is the museum director at CVF. Towe ensured that he would select the director of CVF. The Joint Venture Agreement signed by Edward Towe, on behalf of TAFF, expressly stated that CVF's collection director would be named by TAFF. On these facts, the district court did not clearly err in finding that Towe intermin-

gled his own and his family's affairs with TAFF.

■ The district court did not clearly err in finding that Towe used TAFF to shield himself from liability. Towe was under audit by the IRS when he transferred the cars to TAFF. These audits were pending before the Tax Court at the time Towe claims he transferred the automobiles. Under these circumstances, the district court did not clearly err in inferring that Towe was using TAFF to keep the IRS from levying on his cars.

The district court did not clearly err in finding that Towe made substantial cash contributions to TAFF. The record indicates that Towe made contributions to TAFF in 1984, 1985, 1986, and 1987.

■ The district court found that the facts demonstrated the presence of five factors relied upon by Montana courts in finding an alter ego relationship: 1) position of authority; 2) control; 3) intermingling of personal affairs with the corporation; 4) use of the business entity to shield oneself from liability; and 5) use of one's own funds to pay the business entity's debts. TAFF argues that none of these factors alone is determinative. We agree. However, the district court did not rely on any one factor to reach its judgment. It relied on all these factors to determine that TAFF was the alter ego of Towe. *See Hando,* 771 P.2d at 960 (stating that whether courts will disregard the separate identity of a business entity "depends entirely upon the circumstances of each case"). Under the facts reflected in the record, the district court did not clearly err in determining that TAFF was the alter ego of Towe. *See Drilcon,* 749 P.2d at 1064 (court concluded that individual is the alter ego of corporation because individual was a director and officer of the corporation, took all actions for the corporation without consulting other officers or directors, used his personal funds to pay corporate debts, and used the corporation to shield himself from personal liability).

## V.

■ TAFF contends that we must reverse because the Government offered no evidence that TAFF was used to perpetrate fraud or defeat the public ·convenience. Whether the district court was required to make a finding of fraud before it could pierce the corporate veil is a question of law which we review *de novo. See Wolfe,* 798 F.2d at 1243 n. 1 (stating that whether the alter ego doctrine could be used to require an individual to pay the tax owed by his corporation was a question of law that is reviewed *de novo* ).

■ Montana law does not require a showing of fraud to pierce the corporate veil in tax collection cases. *Id.* at 1244. In *Wolfe,* plaintiff argued that the district court erred in piercing the corporate veil because the district court "failed to find wrongful or fraudulent conduct by the taxpayer." *Id.* We reasoned that "under Montana law, a corporate entity may be pierced without a positive showing of fraud. Indeed, a corporation will be disregarded where it is used to evade a public duty, such as the paying of taxes." *Id.* (footnote and citations omitted); *see also Valley Finance,* 629 F.2d at 171–72 ("The Government's inability otherwise to satisfy legitimate tax debts clearly may form a sound basis for such disregard of corporate form."). Thus, it was unnecessary for the district court to make a finding of fraud in order to disregard TAFF as an entity separate and distinct from Edward Towe. It was only required to find that Towe used TAFF to evade taxes.

The record shows that the district court found that Towe used TAFF to evade tax collection. The district court stated that Towe transferred the automobiles to TAFF "in anticipation of the occurrence of federal tax liabilities." TAFF admitted at trial that Towe was aware that outstanding audits existed at the time of the alleged transfer. These audits were pending before the Tax Court at the time of the alleged transfer. The district court's finding that Towe used TAFF to evade taxes is not clearly erroneous.

Because we conclude that the district court's correctly determined that the United States' levy on the automobiles was justified because TAFF was Towe's alter ego, we need not decide whether the record demon-

strates that TAFF was the nominee of Towe, or that Towe's alleged conveyance of the cars to TAFF was fraudulent. The district court's finding that TAFF was the alter ego of Towe is sufficient to support the district court's judgment that the United States' levy was not wrongful. *See Wolfe,* 798 F.2d at 1244 (affirming district court's judgment that individual was required to pay the taxes owed by his corporation because the individual was the alter ego of his corporation). Because a finding that the conveyance was fraudulent is unnecessary to uphold the judgment, we do not reach TAFF's claim that the United States' fraudulent conveyance defense was barred by the statute of limitations, or TAFF's contention that the United States should not have been permitted to defend on this ground.

### VI.

TAFF contends that the district court erred in denying TAFF's motion to permit its counsel, Thomas E. Towe, to testify at trial regarding the chain of title of the antique automobiles. TAFF argues that the district court's denial of the motion was improper because Edward Towe was incapable of testifying due to his poor recollection of facts important to the lawsuit. TAFF also asserts that the proffered testimony related to an undisputed fact.

■ We have not decided the standard of review of the denial of a motion to permit a party's attorney to testify. The Fourth Circuit, however, has determined that the refusal to let a party's attorney testify should be reviewed under the abuse of discretion standard. *United States v. Fogel,* 901 F.2d 23, 26 (4th Cir.), *cert. denied,* 498 U.S. 939, 111 S.Ct. 343, 112 L.Ed.2d 308 (1990). We conclude that abuse of discretion is the appropriate standard of review.

■ The district court did not abuse its discretion in denying the motion to permit Thomas Towe to testify. The district court found that "[TAFF] has presented no evidence to the Court that demonstrates that Edward Towe is incapable of adequately testifying as to the ownership history of the antique cars." TAFF's allegation that Ed-

ward Towe was incapable of testifying accurately is without support in the record. Because no showing was made that no other witness could testify to the same facts, the district court did not abuse its discretion in denying the motion to permit Thomas Towe to testify. *See Fogel,* 901 F.2d at 26 (stating that a party's attorney can testify if the testimony is important and no other witness can provide the testimony).

### VII.

■ TAFF argues that the levy on the cars without a pre-seizure hearing violates due process. Whether TAFF was entitled to a pre-seizure hearing is a question of law that we review *de novo. Anderson v. United States,* 966 F.2d 487, 489 (9th Cir.1992). The Government argues that TAFF's due process argument is waived because TAFF failed to raise this argument in the district court. This argument is not supported by the record. TAFF raised the argument in district court. The district court's pretrial order lists TAFF's due process argument as one of TAFF's contentions.

■ The record does not indicate that the district court ruled on this issue. It is implicit in the court's judgment, however, that the district court concluded that TAFF was not entitled to a pre-levy hearing. *See Churchill v. F/V FJORD,* 892 F.2d 763, 767 (9th Cir.1988) (rulings implicit in the district court's judgment may be reached and affirmed on appeal), *cert. denied,* 497 U.S. 1025, 110 S.Ct. 3273, 111 L.Ed.2d 783 (1990). TAFF was not entitled to a hearing before the automobiles were levied by the IRS. In *Tavares v. United States,* 491 F.2d 725 (9th Cir.1974), *cert. denied,* 420 U.S. 925, 95 S.Ct. 1120, 43 L.Ed.2d 394 (1975), we held that a judicial hearing was not required prior to a taking of the taxpayer's property. *Id.* at 726. "[T]he right of the United States to exact immediate payment and to relegate the taxpayer to a suit for recovery, is paramount." *Id.* (quoting *Phillips v. Commissioner of Internal Revenue,* 283 U.S. 589, 599, 51 S.Ct. 608, 612, 75 L.Ed. 1289 (1931)).

## VIII.

TAFF contends that the district court erred in denying TAFF's request for a jury trial. Whether a party is entitled to a jury trial is a question of law that we review *de novo*. *Adams v. Johns–Manville Corp.*, 876 F.2d 702, 704 (9th Cir.1989). TAFF brought this wrongful levy action pursuant to 26 U.S.C. § 7426. The district court had jurisdiction pursuant to 26 U.S.C. § 7426 and 28 U.S.C. § 1346(e). 28 U.S.C. § 2402 provides that "Any action against the United States *under section 1346 shall be tried by the court without a jury,* except that any action against the United States under section 1346(a)(1) shall, at the request of either party to such action, be tried by the court with a jury." (emphasis added). TAFF makes no allegation that its action arises under section 1346(a)(1). The district court properly found that TAFF was not entitled to a jury trial. TAFF argues that the district court also had jurisdiction under 26 U.S.C. § 7426. However, TAFF cites no authority suggesting that jurisdiction premised on section 7426 entitles it to a jury trial, and we have found none.

AFFIRMED.

BEEZER, Circuit Judge, dissenting:

Because the evidence does not support a finding that any transfer of the automobile collection from Edward Towe to the Towe Antique Ford Foundation (TAFF) was a fraudulent attempt to evade the payment of federal taxes, I would reverse the district court's judgment. I would remand for factual findings on whether any transfer occurred and, if a transfer took place, whether the Internal Revenue Service can present sufficient evidence to show that the transfer defrauded the IRS or that TAFF was otherwise used to evade taxes.

## I

The IRS began annual audits of Towe in 1960. By 1981, Towe had paid all determined liabilities for preceding tax years. At trial, uncontradicted documentary evidence prepared by TAFF's financial expert showed that in 1981 Towe had net worth of over $1.9 million, taking into account all taxes for preceding years for which he would ultimately be held liable. TAFF relies upon this evidence on appeal, and the IRS does not challenge its accuracy.

TAFF, a tax-exempt corporation formed by Towe, alleged that by the end of 1981, Towe transferred the automobile collection to TAFF. The district court found it unnecessary to decide whether this transfer had occurred. The record shows that TAFF leased the collection to corporations not affiliated with Towe for public display in California and Montana and that these corporations employed two members of Towe's family. Towe received no compensation or other direct financial benefit from TAFF. TAFF regularly filed returns with the IRS reporting ownership of assets worth over $2 million and transactions involving substantial sums of money. The 1983 return stated the collection was available for viewing 363 days a year and over 32,000 visitors viewed the collection in that year. The IRS does not state that it has ever disputed any aspect of these returns.

The district court found any transfer of the collection to TAFF was "done in anticipation of the occurrence of federal tax liabilities." Disregarding TAFF's existence and finding that any transfer defrauded the IRS, the court ruled the IRS properly seized the collection in 1989 to satisfy Towe's tax liability.

## II

Montana law determines whether TAFF is liable for Towe's debt. *Wolfe v. United States*, 798 F.2d 1241, 1244 n. 3 (9th Cir. 1986), *amended,* 806 F.2d 1410, *cert. denied,* 482 U.S. 927, 107 S.Ct. 3210, 96 L.Ed.2d 697 (1987). As an "equitable remedy," Montana will disregard a corporation's existence to "curb injustices" resulting from improper use of the corporation. *Hando v. PPG Indus.,* 236 Mont. 493, 771 P.2d 956, 960 (1989). Notwithstanding that the IRS cites no Montana authority holding a corporation responsible for a person's liability, I believe, in light of *Hando* and similar cases, Montana would so hold when necessary to achieve equity. In balancing the equities, we treat the IRS "analogous to any creditor" seeking to collect from TAFF a debt owed by Towe. *Wolfe,*

798 F.2d at 1243. Specifically, disregarding TAFF's existence would require the IRS to show that TAFF had no identity apart from Towe, and that TAFF was used "to defeat public convenience[, i.e., evade a public duty], justify wrong, or perpetrate fraud." *Drilcon, Inc. v. Roil Energy Corp.*, 230 Mont. 166, 749 P.2d 1058, 1064 (1988).

Assuming the district court properly found that TAFF and Towe are "one and the same," a dubious assumption considering that Towe derived no direct benefit from TAFF's operations, the evidence does not support a finding that any transfer of the automobiles defeated "public convenience" through tax evasion. *Drilcon*, 749 P.2d at 1064. The court merely noted that at the time of the alleged transfer, Towe was under audit and his potential tax liability was uncertain. Towe, however, had been under audit for over 20 years, had paid all established tax liability and had more than ample resources to pay all the liability that was eventually determined. Nothing suggests that Towe had any unusual difficulty with the IRS or that he transferred the collection in an attempt to defeat an IRS levy that would occur eight years later.

The evidence also fails to support a finding of any "wrong" or "fraud" against the IRS. *Drilcon*, 749 P.2d at 1064. The district court found no direct evidence of actual fraud, but drew an inference of fraud from the following circumstances: (1) Towe received no consideration from TAFF, (2) Towe's tax liability had not been established, (3) Towe had control of TAFF and (4) Towe and his family had benefitted from their association with TAFF. These circumstances do not show anything improper relating to the IRS, much less fraud. That Towe received no consideration is evidence of a bona fide charitable contribution. Towe's substantial net worth, together with TAFF's legitimate operations, negates any inference of a fraudulent contribution. No evidence demonstrates that Towe or his family otherwise used TAFF to defraud the IRS. Rather, the evidence shows TAFF was a genuine tax-exempt organization that accurately reported its financial affairs to the IRS. The IRS has not shown any wrong that justifies disregarding TAFF's existence.