**United Enterprises, Inc.,**
Doing Business as
United Travel Agency,
Plaintiff/Counter-
Defendant/Appellant,
**v.**

Esteban M. **King**,
Also Known as Steven King, and
Emiliana SN. King,
Also Known as Emy King,
Defendants/Counter-
Plaintiffs/Appellees.
Appeal No. 94-046
Civil Action No. 93-1174
November 30, 1995

Argued and Submitted October 12, 1995

Counsel for appellant: Jay H. Sorenson, Saipan.

Counsel for appellees: Brien Sers Nicholas, Saipan.

BEFORE: VILLAGOMEZ and ATALIG, Justices, and MACK, Special Judge.

ATALIG, Justice:

The plaintiff, United Enterprises, Inc. ("United"), appeals from an order granting the defendants', Esteban and Emiliana King, counterclaim for a $22,500 commission. The trial court deducted this amount from a

305

judgment for United.[1] Liability for the commission was based on the actions of Mr. Young J. Oh ("Oh").

■ This Court has jurisdiction pursuant to 1 CMC § 3102(a). We reverse the trial court's judgment for the defendants on their counterclaim and remand for the court to enter judgment for United as amended.

## ISSUE PRESENTED AND STANDARD OF REVIEW

■ The dispositive issue on appeal is whether sufficient evidence supports the trial court's conclusion that United was an alter ego of Oh and, therefore, liable for Oh's actions.

We review the court's conclusion for sufficiency of the evidence. *See Manglona v. Kaipat*, 3 N.M.I. 322, 329 (1992). Under this standard, we determine if "the evidence, when viewed in a light most favorable to the prevailing party, is sufficient to support the conclusion of the fact-finder." *Id.* Whether sufficient evidence supports a court's factual finding is also a legal conclusion reviewable de novo. *In re Estate of Deleon Castro*, 4 N.M.I. 102, 105 (1994).

## FACTUAL AND PROCEDURAL BACKGROUND

United is a corporation of the Commonwealth of the Northern Mariana Islands ("CNMI"). Oh, while president of United Engineering, Inc. ("Engineering"), was also a director, president, and shareholder of United. Beginning in 1989, the defendants arranged with United to purchase airline tickets on credit. On December 6, 1989, Oh, as the president of Engineering, wrote a letter to the defendant Esteban King ("King") expressing his appreciation for King's assistance in "processing the business license of Tinian Fashion, Inc.," and acknowledging that he owed King a $22,000 commission.[2]

Between January and October 17, 1990, King and United maintained an account for the purchase of airline tickets. As of October 17, 1990, the defendants' account had a due balance of $32,189.60.

On November 3, 1993, United filed a complaint for payment of the $32,189.60. The defendants filed an answer on December 2, 1993, with a counterclaim alleging that United owed them a $22,500 commission.

At trial, there was no dispute as to the $32,189.60 owed United. The controversy involved the counterclaim and an approximately $7,500 previous payment by King to United.

■ After United's case-in-chief, the defendants moved for a directed verdict on their counterclaim. The court adopted the defendants' arguments,[3] granted the motion from the bench,[4] and offset the judgment for United by $22,500. On October 20, 1994, the trial court issued judgment for United in the amount of $8,727.65.[5] United timely appealed.

---

[1] Neither the $24,709.60 judgment nor the costs and fees levied in favor of the plaintiff, United Enterprises, Inc. ("United"), are at issue on appeal.

[2] Plaintiff's Exhibit 10, *United Enterprises, Inc. v. King*, Civ. No. 93-1174 (N.M.I. Super. Ct. admitted Oct. 12, 1994).

[3] Com. R. Civ. P. 52(a) requires sufficient statements of factual findings and conclusions of law. *Manglona v. Kaipat*, 3 N.M.I. 322, 338 (1992); *see also Olopai v. Fitial*, 3 N.M.I. 101, 107 (1992). Here, the defendants' directed verdict motion was based on two alternative theories, alter ego and agency. *See* Transcript of Proceedings at 125-26 (Oct. 12, 1994), *United Enters., Inc. v. King*, Civ. No. 93-1174 (N.M.I. Super. Ct. transcribed Mar. 15, 1995). Yet, the court did not either state the basis for its conclusion or find specific facts. *See id.* at 140. We need not, however, remand this matter due to lack of specific findings or conclusions in that, first, the parties agree that the trial court rendered its decision based on the alter ego theory, and second, a review of the record suffices for a sufficiency of the evidence standard as applied to the alter ego theory in this matter. We remind the trial court, however, to comply with Com. R. Civ. P. 52. Furthermore, we are disturbed by the nonjoinder of Oh, Engineering, or any of Engineering's other shareholders. The liability of these third parties was litigated without an opportunity for them to be heard. This disregards both the rules of civil procedure and due process. *See generally* Com. R. Civ. P. 13(a), 13(h), 19, 20; *Tinian Cockfighting Bd. v. Aquino*, 3 N.M.I. 284, 299 (1992) (citing N.M.I. Const. art. I, § 5 and Com. R. Civ. P. 19). However, in light of our decision, we need not remand.

[4] The court's disposition of the matter as a directed verdict was erroneous. *See generally* Com. R. Civ. P. 50.

[5] The court arrived at this figure as follows: (1) the payment by King to United was deducted from the initial debt of $32,189.60, for a judgment for the plaintiff in the amount of $24,709.60; (2) the court then deducted, as an offset, the $22,500, leaving a figure of $2,209 still owed for the sale of the airline tickets. The parties stipulated to this figure. To this figure of $2,209, the court added the computed costs of $713.65 and attorney's fees in the amount of $5,805 for the defendants, for a total judgment in the amount of $8,727.65. *See* Transcript of Proceedings, *supra* note 3, at 141-71.

## ANALYSIS

United contends that there is insufficient evidence to justify its liability for Oh's actions as president of Engineering under an alter ego theory. The defendants argue that the court correctly concluded that Oh's relationship with United and Engineering was such that any liability for the commission incurred by Oh individually or as president of Engineering may serve to offset United's claim against the defendants.

 Generally, a corporation and its shareholders are deemed "separate entities and, consequently, shareholders are not liable to third persons for corporate debts beyond their investment in stock of the corporation." *Economic Dev. Loan Fund v. Pangelinan*, 2 CR 451, 457-58 (D.N.M.I. App. Div. 1986). Where, however, shareholders treat the corporation not as a "separate entity but instead as an instrument to conduct their own personal business," the corporation and the shareholder are deemed one entity under the alter ego doctrine, and the court may "pierce the corporate veil" for purposes of liability. *Id.*, 2 CR at 458.

The alter ego theory is usually used to attach liability to individual shareholders of a corporation. Some jurisdictions, however, have found the corporation, and not individual shareholders, liable. *See, e.g., Las Palmas Assocs. v. Las Palmas Center Assocs.*, 1 Cal. Rptr. 2d 301, 317 (Cal. Ct. App. 1991); *cf. Towe Antique Ford Found. v. I.R.S.*, 999 F.2d 1387, 1391-93 (9th Cir. 1993). This is known as a "reverse piercing" of the corporate veil. In effect, this is what the trial court did. It first concluded that United and another corporation, Engineering, were alter egos of Oh, and then held United liable for a purported commission owed and incurred by Oh as president of Engineering.

 Whether a corporation and a shareholder may be deemed one for purposes of liability under the alter ego doctrine requires a two-part examination. First, the court must look at several factors to determine whether the corporation and shareholder are indeed acting as one. *Pangelinan*, 2 CR at 458. Among these commonly examined are:

> [U]ndercapitalization, failure to observe corporate formalities, nonpayment of dividends, siphoning of corporate funds by dominant stockholders, nonfunctioning of other officers or directors, absence of corporate records, use of the corporation as a facade for the operations of the dominant stockholders, and use of the corporate entity in promoting injustice or fraud.

*Id.*

Other relevant factors considered by courts may include:

> 1. Whether the individual is in a position of control or authority over the entity;
> 2. Whether the individual controls the entity's actions without need to consult others;
> 3. Whether the individual uses the entity to shield himself from personal liability;
> 4. Whether the individual uses the business entity for his or her own financial benefit;
> 5. Whether the individual mingles his own affairs in the affairs of the business entity; [and]
> 6. Whether the individual uses the business entity to assume his own debts, or the debts of another, or whether the individual uses his own funds to pay the business entity's debts.

*Towe*, 999 F.2d at 1391 (citations omitted).[6]

Only when the court has determined that a corporation and shareholder are identical will it then proceed to determine whether it will "pierce the corporate veil" for purposes of liability. To do so, the court must apply a two-part test. First, "[w]hether the interests of the dominant stockholders are so intertwined with those of the corporation that separate entities no longer exist, and[, second] [w]hether injustice or fraud would result if the fiction of separate entities was upheld." *Pangelinan*, 2 CR at 458.[7]

We have examined both the defendants' factual assertions made in support of their motion for directed verdict and the testimonial evidence at trial and, for the following reasons, conclude that they are insufficient to support a conclusion that United is an alter ego of Oh.[8]

In support of their motion, the defendants asserted that: (1) "there was an account opened at [United] . . .[2]

---

[6] In *Towe Antique Ford Found. v. I.R.S.*, 999 F.2d 1387 (9th cir. 1993), the Ninth Circuit noted that in Montana, as in the NMI, "'no concrete formula exists under which a court will disregard the separate identity of the corporate entity.'" *Id.*, 999 F.2d at 1391 (citation omitted). Instead, courts examine a variety of relevant factors.

[7] *Cf. id.* ("First, the party seeking to pierce the corporate veil must show that the corporation is the alter ego of the individual[;] . . . [s]econd, 'there must be a showing that the corporate entity was used as a subterfuge to defeat public convenience, justify wrong or perpetrate fraud'") (citations omitted).

[8] Because we conclude that United was not an alter ego of Oh, any discussion as to the relationship between Oh and Engineering is irrelevant.

that . . . Oh[,] . . . the majority shareholder of [United and Engineering], acknowledged a debt to [King] . . . in the form of a $22,000 commission payment . . . [3] Oh [acknowledged the debt] as the president of Engineering . . . [and then] as the president of [United], he permitted Mr. King to take advantage of some [$]22,500 as his commission and let him make the payment to plaintiff. Now, he is acting as the president of [United], not as [president of Engineering]." Transcript of Proceedings at 124-27, *United Enters., Inc. v. King*, Civ. No. 93-1174 (N.M.I. Super. Ct. transcribed Mar. 15, 1995). None of these assertions imply that Oh improperly used United for his own personal gain under the relevant alter ego factors. They simply do not allege the facts needed to show that United and Oh were acting as one.

On appeal, the evidence cited by the defendants in support of their argument that United was an alter ego of Oh stems largely from the testimony of Oh's wife, Kum Sun Oh ("Mrs. Oh"). However, when read in its entirety, Mrs. Oh's testimony either is irrelevant to the applicable factors or insufficient to support a conclusion of an alter ego relationship between Oh and United.

With respect to United, Mrs. Oh testified that: (1) she served as general manager, vice-president/treasurer, and director, but was not a shareholder;[9] (2) Oh did all the "documentation work" for United; (3) while United did have board meetings, she did not attend any of them; (4) United's capitalization began at $50,000 and increased to $150,000 after 1990; and (5) finally, United owed $400,000 to creditors. Transcript of Proceedings, *supra*, at 66-67, 70, 94, 96-98, 109-10.

The defendants appear to argue that because Mrs. Oh did not attend any board of directors meetings, she did not function as a director of United. However, her failure to attend the meetings is explained. For example, Mrs. Oh testified, through an interpreter, that the reason she did not attend United's board meetings, and the reason why her husband handled the "documentation work" and was the "one arranging everything," *id.* at 96-

97, was because she is "not ah really good English, so my husband is do everything." *Id.* Without more, her testimony was insufficient to indicate that she failed to function as a director of United.

Indeed, Mrs. Oh's testimony evinces that she actively participated in United's operations. For example, she testified that, individually, she signed checks for United as an officer. *Id.* at 112. This belies any argument of sole control by Oh of United. *See also id.* at 97, 103 (testimony by Mrs. Oh that due to her lack of command of English she "only work[ed] at United").

Additionally, the defendants argue that United was undercapitalized because it was unable to satisfy the $400,000 it had incurred in debt to airlines.[10] However, Mrs. Oh also testified that there were accounts receivable in the amount of $200,000, the sales volume per month was approximately $300,000, and the debt could not be paid because of uncollected accounts. *Id.* at 93-94. United's inability to collect accounts does not bear on the issue of undercapitalization.

Furthermore, pursuant to 4 CMC § 4103(a)(6), applicants for corporate charters must specify the amount of capitalization in an application that must be approved by the Governor. The defendants have not shown that the approved initial capitalization figure of $50,000 for United was insufficient.

Finally, the defendants' contention that the letter from Oh, on Engineering stationery, authorized a credit from United to the defendants is without merit. According to the defendants' arguments, the commission was owed to King by Oh for the former's assistance in the issuance of a license for Tinian Fashions, Inc. Appellees' Brief at 9-10. However, the defendants do not contend that Tinian Fashions, Inc., was an alter ego of Oh, nor was that corporation joined in the action below. The letter does not serve to show that Oh acted in an unauthorized manner, nor does it link Engineering, for purposes of liability, via Tinian Fashions to United. Hence, any promise made or obligation incurred by Oh on behalf of Tinian Fashions, Inc., is irrelevant to this matter.

## CONCLUSION

Based on the foregoing, we hereby **REVERSE** that portion of the judgment for the defendants on their counterclaim and **REMAND** this matter to the trial court

---

[9] Mrs. Oh testified that while initially she was a director of United, Oh was the general manager until she assumed that position in 1986, when Engineering opened. Transcript of Proceedings, *supra* note 3, at 103. She also testified that she did not become a shareholder in United until 1993, when her husband gave her shares. *Id.* at 97-98. However, it is not clear from her testimony at what point she became a director of United. The only admitted evidence regarding her status as a director were the 1990 annual reports of the respective corporations, dated April 8, 1991, listing Oh, Mrs. Oh and Moses Quitugua as the directors of Engineering. The report for United lists the directors as Oh, Mrs. Oh and Kim Chul Sanho. *See* Defendant's Exhibits F & G, *King*, *supra* note 2, (admitted Oct. 12, 1994).

[10] *See* Appellees' Brief at 6.

to enter judgment for the plaintiff in the amount of $31,227.65, with interest pursuant to Com. R. App. P. 37.