**UNITED STATES of America,**
**Plaintiff,**

v.

**Robert L. STEPHENS, Jr., Buffalo Brewing Company, Inc., First Citizens Bank, and Iva Della Stephens, Defendants.**

**Robert L. Stephens, Jr., Third Party Plaintiff,**

v.

**Montana General Corp., Third Party Defendant.**

**No. CV–03–81–BLG–RFC.**

United States District Court, D. Montana, Billings Division.

Oct. 13, 2009.

Curtis C. Smith, U.S. Department of Justice, Washington, DC, Timothy J. Cavan, William W. Mercer, Office of the U.S. Attorney, Billings, MT, for Plaintiff.

James A. Patten, Patten Peterman Bekkedahl & Green, Joel E. Guthals, Guthals Hunnes Reuss & Thompson, Billings, MT, for Defendants.

Robert L. Stephens, Jr., Billings, MT, pro se.

Benjamin J. Labeau, Attorney at Law, Billings, MT, for Third Party Defendant.

## ORDER RE: MOTIONS FOR SUMMARY JUDGMENT

RICHARD F. CEBULL, District Judge.

### I. INTRODUCTION

The United States filed this lawsuit to collect unpaid federal income taxes from Defendant Robert L. Stephens, Jr. Presently before the Court are three motions for summary judgment:

(1) United States' Motion for Summary Judgment (*Doc. 58* );

(2) Defendants' Cross–Motion for Summary Judgment (*Doc. 69* ); and

(3) Montana General Corp.'s Motion for Summary Judgment (*Doc. 75* ).

### II. FACTUAL BACKGROUND

The Internal Revenue Service has made Assessments for unpaid federal income taxes, penalties, and interest against Defendant Stephens for the tax years 1988 and 1994–2000. The United States now concedes Stephens has no tax liability for tax year 1999, *Doc. 83, p. 3,* and seeks only to collect a portion of the taxes owed for 1988 because the statutory period for assessment expired before the Complaint was filed. As of June 29, 2009, the United States seeks a judgment in the amount of $140,195.78, plus interest and statutory accruals as provided by law. *Doc. 83, p. 3.*

In order to collect the unpaid income taxes, the United States seeks to foreclose on (1) proceeds from the sale of a parcel of real property formerly owned by Defendant Buffalo Brewing Company, Inc., known for purposes of this litigation as Parcel 1, and (2) two parcels of land (Parcels 2 and 3) in Billings, Montana owned by Buffalo Brewing. As discussed below, the United States claims Buffalo Brewing is the alter ego of Defendant Stephens and therefore it may foreclose the tax liens against the property in order to satisfy Stephens's tax obligations.

Parcel 1, the "Old Silver Dollar Saloon," was purchased by Buffalo Brewing on January 19, 1999 for $25,000. Buffalo Brewing paid the $5,000 down payment with proceeds from Stephens's law practice. Parcel 1 has been sold and approximately $53,000 in proceeds have been placed with the Clerk of Court.

Parcel 2 is a vacant lot located on Minnesota Avenue in Billings. Buffalo Brewing purchased it on October 8, 1988.

Parcel 3, also located on Minnesota Avenue in Billings was purchased by Defendant Montana General Corp., another entity controlled by Stephens, on September 23, 1994. On December 31, 1997, Montana General conveyed Parcel 3 to R and R partnership for no consideration. Parcel 3 was then conveyed to Buffalo Brewing via warranty deed on September 30, 1998.

Stephens has used the downstairs portion of Parcel 3 as his law office since July of 1999 and has used the upstairs portion as his personal residence since December of that year. Stephens does not pay any monetary rent for his personal occupancy, but provides maintenance and security services.

The down payment on the purchase of all three properties was paid with income from Stephens's law practice. Buffalo Brewing did not execute any promissory notes in relation to the funds Stephens used to purchase Parcels 1, 2, or 3, and there are no other agreements requiring Buffalo Brewing to repay Stephens for the financial contributions he made to the purchase of these properties. Stephens has testified that one of the purposes of acquiring these properties was to provide for his retirement.

Stephens is the president, registered agent, corporate attorney, sole shareholder, and only incorporator of Buffalo Brewing. Other than Stephens, Buffalo Brewing has no "active" directors, or officers and has never had any employees. Stephens makes the decisions on behalf of Buffalo Brewing as to what will be done with its property. Buffalo Brewing's procedure for annual meetings is to have the directors sign a waiver and have the minutes circulated for approval. Stephens is the only person with signatory authority on Buffalo Brewing's bank accounts. Since Buffalo Brewing does not file income taxes, Stephens records the income and deductions on his personal tax return.

Stephens admits he has had significant difficulty in reconciling Buffalo Brewing's bank accounts with his personal accounts and those of his law firm. From time to time, Stephens uses Buffalo Brewing's funds to pay personal expenses. Moreover, the amount of his contributions to Buffalo Brewing are not precisely documented because Buffalo Brewing has no way of repaying those contributions.

The Articles of Incorporation for Buffalo Brewing were signed on June 23, 1998 and filed with the Montana Secretary of State on July 6, 1998. Stephens has admitted that he knew he had outstanding personal federal tax liabilities at the time Buffalo Brewing was incorporated. Buffalo Brewing financed all three Parcels with a mortgage from First Citizen's Bank, which Stephens personally guaranteed. Mortgage payments were made either from income transferred to it from Stephens's law practice or paid by Stephens directly. The only source of income to Buffalo Brewing has been rent from Parcels 1 and 3, most of which has been paid by Stephens's law firm.

Stephens has also used income from his law practice to purchase time shares in Mexico in the name of Buffalo Brewing and he does not compensate Buffalo Brewing for the use of these time shares.

Montana General Corporation also claims an interest in the three parcels on account of the $121,400 it expended in the remodeling of Parcel 3. For that reason, Stephens named it as a Third Party Defendant in this action. Stephens is the sole incorporator of Montana General, its general manager and registered agent. He is also its only active board member or officer. Montana General Corporation's stock was initially issued to Robert L. Stephens, Jr., but was subsequently transferred to the Stephens Family Trust, for which Stephens is the settlor and trustee. Like Buffalo Brewing, Montana General does not file tax returns. Stephens records the income and deductions on his personal tax return. Montana General leases space from Buffalo Brewing at Parcel 3, but does not pay rent for use of the space.

Buffalo Brewing, Montana General, and Stephens's law practice, all use Parcel 3 as their place of business.

### III. ANALYSIS

#### A. SUMMARY JUDGMENT STANDARD

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party and a dispute is "material" only if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The party moving for summary judgment has the initial burden of showing the absence of a genuine issue of material fact. *Anderson*, 477 U.S. at 256–57, 106 S.Ct. 2505. Once the moving party has done so, the burden shifts to the opposing party to set forth specific facts showing there is a genuine issue for trial. *In re Barboza*, 545 F.3d 702, 707 (9th Cir.2008). The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." *Id.*

On summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Id.* The court should not weigh the evidence and determine the truth of the matter, but determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505.

#### B. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (*Doc.69*)

##### 1. TAX YEAR 1988

■ The United States is only seeking to collect on a portion of the assessments made against Stephens for tax year 1988, the assessments made on May 13, 1993 and September 19, 1994, in the total amount of $12,393.41. *Doc. 84, U.S. Statement of Genuine Issues in Response to Defendants' Cross Motion for Summary Judgment*, ¶ 2. Defendants argue the statute of limitations has run on these assessments.

■ The United States must assess any tax imposed by the Internal Revue Code within three years of the filing of the tax return. 26 U.S.C. § 6501(a); *Benson v. C.I.R.*, 560 F.3d 1133, 1135 (9th Cir.2009). With respect to tax assessments made prior to November 5, 1990, the United States was required to file an action to collect on the assessment within six years. *Foutz v. United States*, 72 F.3d 802, 804 (10th Cir. 1995) citing prior version of 26 U.S.C. § 6502. A lawsuit to collect on an assessment made after November 3, 1990 must be filed within ten years. *Id.*

Here, the assessments were made on May 13, 1993 and September 19, 1994. Although this was more than three years after September 14, 1989, the date that Stephens's 1988 tax return was filed, Stephens signed form 872–A, a "Special Consent to Extend the Time To Assess Tax," on June 2, 1992. *Doc. 85, Ex. 1.* Stephens has not argued that the May 13, 1993 and September 19, 1994 assessments were made in violation of the Special Consent, but argues only that the six year statute of limitations applies because he filed his 1988 tax return on September 14, 1989. *Doc. 71, pp. 6–7.* As noted above, a ten year statute of limitations applies to *assessments* made after November 5, 1990, the date of the enactment of Public Law

101–588. *Foutz,* 72 F.3d at 804. Since this lawsuit was filed on May 12, 2003, it is timely.

Accordingly, Defendants' motion for summary judgment must be denied as to the 1988 tax year.

### 2. AMENDED 1999 TAX RETURN

The United States has conceded its claims for the 1999 tax year. *Doc. 83, p. 3.* Defendants' motion will be granted as to tax year 1999.

### 3. 2001 AND 2003 TAX RETURNS

Stephens claims he overpaid his federal income taxes for tax years 2001 and 2003 and that based on the doctrine of equitable recoupment, he should be able to reduce his tax liabilities for 1988, 1994–1998, and 2000 by that amount. The doctrine of equitable recoupment, however, provides that a party "litigating a tax claim in a timely proceeding may, in that proceeding, seek recoupment of a related, and inconsistent, but now time-barred tax claim *relating to the same transaction.*" *United States v. Dalm,* 494 U.S. 596, 608, 110 S.Ct. 1361, 108 L.Ed.2d 548 (1990) (emphasis added). Here, among other things, Stephens has made no showing that his claims relating to tax years 2001 and 2003 are time barred, or that they relate to the same transaction as his tax liabilities for years 1988, 1994–1998, and 2000.

Defendants' motion must be denied as to the claim for recoupment of amounts overpaid in 2001 and 2003.

### C. UNITED STATES' MOTION FOR SUMMARY JUDGMENT (*Doc.58* )

The United States Motion for Summary Judgment seek; judgment as a matter of law reducing the tax assessments against Stephens to judgment. The United States' motion also seeks judgment as a matter of law that the federal income tax liens related to the assessments be foreclosed upon real property held by Buffalo Brewing (Parcels 2 and 3) and the approximately $53,000 held by the Court resulting from Buffalo Brewing's sale of Parcel 1. The United States argues it may foreclose upon this property because Buffalo Brewing, the entity which owns or owned the property, and Montana General, the entity purportedly having a construction lien on the properties, are the alter egos and nominees of Robert L. Stephens, Jr.

### 1. THE IRS TAX ASSESSMENTS MAY BE REDUCED TO JUDGMENT

In an action to collect tax, the Government bears the burden of proof. *United States v. Stonehill,* 702 F.2d 1288, 1293 (9th Cir.1983). It can meet its burden of proof with federal tax assessments, to which a presumption of correctness attaches. *Id.* A "Certificate of Assessments, Payments, and Other Specified Matters," form 4340, is highly probative, self-authenticating, admissible evidence that notices and assessments were properly made. *United States v. Cowan,* 535 F.Supp.2d 1135, 1143 (D.Haw.2008) citing *Hughes v. United States,* 953 F.2d 531, 539–40 (9th Cir.1992). Here, the United States has met its initial summary judgment burden with Forms 4340 for tax years 1988, 1994–1998, and 2000. *Doc. 67, Exs. 1–6 & 8.*

Defendants, however, argue only that Buffalo Brewing is not Stephens's alter ego and that the tax liabilities should be offset on account of a counterclaim that they have not filed. *Doc. 74.* Defendants have failed to assert specific, documented facts contesting Stephens's tax liability. Accordingly, the United States is entitled to judgment as a matter of law reducing Stephens's tax liability to judgment. See *Cowan,* 535 F.Supp.2d at 1143–44.

### 2. BUFFALO BREWING IS THE ALTER EGO OF ROBERT L. STEPHENS, JR.

The United States may reach the assets of a corporation to satisfy the tax debt of an individual if the corporation

if the corporation is deemed the "alter ego" of the individual. *Towe Antique Ford Foundation v. I.R.S.*, 999 F.2d 1387, 1390–91 (9th Cir.1993). Federal courts in the Ninth Circuit employ the law of the forum state to determine whether a corporation is the alter ego of a taxpayer *Towe,* 999 F.2d at 1391.

 Under Montana law, courts may pierce the corporate veil if (1) the corporation is the alter ego of the individual and (2) the corporate entity was used "as a subterfuge to defeat public convenience, justify wrong, or perpetrate fraud." *Id.* In tax cases, however, Montana law does not require a showing of fraud—a "corporation will be disregarded where it is used to evade a public duty, such as the paying of taxes." *Towe,* 999 F.2d at 1393. Since maintaining the corporate shield between Stephens and Buffalo Brewing would insulate Stephens from his tax liability, the United States may reach Buffalo Brewing's real property if it is Stephens's alter ego.

 In determining whether a corporation is the alter ego of an individual, there is no "concrete formula." *Towe,* 999 F.2d at 1391. Rather, courts should consider the following factors:

1. Whether the individual is in a position of control or authority over the entity;
2. Whether the individual controls the entity's actions without need to consult others;
3. Whether the individual uses the entity to shield himself from personal liability;
4. Whether the individual uses the business entity for his or her own financial benefit;
5. Whether the individual mingles his own affairs in the affairs of the business entity;
6. Whether the individual uses the business entity to assume his own debts, or the debts of another, or whether the individual uses his own funds to pay the business entity's debts.

*Towe,* 999 F.2d at 1391.

Here, the United States has offered valid summary judgment evidence from which the only reasonable conclusion is that Buffalo Brewing is the alter ego of Robert L. Stephens, Jr. With respect to the first two factors, Stephens is the president, registered agent, corporate attorney, and sole shareholder of Buffalo Brewing, an entity with no other employees. *Doc. 60, U.S. Statement of Facts ("SUF"),* ¶¶ 21–22. Stephens has also testified that he makes the decisions as to who Buffalo Brewing leases space to, the amount to charge for rent, and whether to encumber its real property *Id.* at ¶¶ 26–27. In fact, Stephens has lived in and operated his law practice from Buffalo Brewing's property for ten years, without paying any monetary rent. *Id.* At ¶ 25. Finally, Stephens is a so the only one with signatory authority on Buffalo Brewing's bank accounts. *Id.* at ¶ 23.

As to the third factor, it is a reasonable inference that Stephens used Buffalo Brewing to shield his real property from his personal tax liability. Stephens incorporated Buffalo Brewing in 1998. In 1998 and 1999, Stephens, through Buffalo Brewing, purchased Parcels 1 and 2 at a time when he knew that he owed back taxes. Parcel 3 was purchased by Montana General Corporation in 1994, at a time when Stephens was subject to federal tax liens for tax year 1988. *Ex. 1 to Doc. 66.* In 1997, Parcel 3 was transferred to R and R Partnership, which consists of two of Stephens's relatives, for no consideration. *SUF* at ¶ 17. Less than one year later, Parcel 3 was transferred to Buffalo Brew-

ing, also for no consideration. *Id.* Stephens has testified that while he did place the properties in Buffalo Brewing's name for the purpose of avoiding tax liability, he hoped the real estate held by Buffalo Brewing could contribute to his retirement. Depo. Robert Stephens, 90:20–94:1 (July 14, 2005), *Ex. 27 to Doc. 62.*

Factors four through six address whether Stephens co-mingles his personal assets with those of Buffalo Brewing. The evidence shows that he did. First, Buffalo Brewing does not file its own tax return. Stephens reports Buffalo Brewing's income and deductions on his personal tax return. *SUF* at ¶ 30.

Further, Stephens (1) admits he has not kept his personal finances separate from those of Buffalo Brewing, but has used Buffalo Brewing accounts to pay personal expenses for himself and his family, *SUF* at ¶¶ 24, 32; (2) used personal funds earned through his law practice as the down payment for Parcels 1, 2, and 3, with no expectation that Buffalo Brewing will ever pay him back, *Id.* at ¶¶ 18, 19; (3) personally guaranteed the mortgage on all three Parcels, *Id.* at ¶ 28; and (4) paid the mortgage with personal funds when Buffalo Brewing had insufficient funds, *Id.* at ¶ 28. Stephens has also used his personal funds to pay utilities and insurance premiums for Buffalo Brewing properties when it is unable to do so. *Id.* at ¶ 28.

In addition, Stephens used money from his law practice to purchase two time shares in Mexico in the name of Buffalo Brewing and he does lot compensate Buffalo Brewing for his use of the time shares. *Id.* at ¶ 29. Finally, Buffalo Brewing's only source of income is rent from Parcels 1 and 3, most of which comes from rent paid by Stephens's law firm. *Id.* at ¶ 28. Because it is very unlikely that Buffalo Brewing will ever repay Stephens for the funds he has contributed to Buffalo Brew-

ing, the contributions have not been accurately documented. *Id.* at ¶ 31.

In response to the overwhelming evidence that Buffalo Brewing is Stephens's alter ego, Stephens argues that the above facts are present in almost every closely held corporation and claims that disputed issues of material fact preclude summary judgment on this issue. Stephens, however, has filed neither a L.R. 56.1(b) Statement of Genuine Issues nor any affidavits or other discovery materials in support of the arguments he makes. As such, he has not met his burden of producing specific evidence, through affidavits or other discovery materials, showing there is a genuine issue to be tried. *In re Barboza,* 545 F.3d at 707.

Regardless, even assuming Stephens had documentation for all the facts he asserts in pages 4–7 of his response brief, *Doc. 74,* the Court would still conclude that he has not raised genuine issues of material fact as to whether Buffalo Brewing is his alter ego.

### 3. BUFFALO BREWING IS ALSO THE NOMINEE OF ROBERT L. STEPHENS, JR.

Alternatively, the United States argues that it may foreclose Parcels 2 and 3 because Buffalo Brewing is Stephens's nominee. In collecting legitimate tax debts, the United States may levy on property held by a corporation if the corporation is determined to be a nominee of the taxpayer. *Towe Antique Ford Foundation v. I.R.S.,* 791 F.Supp. 1450, 1453 (D.Mont.1992). This Court has previously considered the following factors in determining whether a business entity is the nominee of the taxpayer:

(a) No consideration or inadequate consideration paid by the nominee;

(b) Property placed in the name of the nominee in anticipation of a suit or

occurrence of liabilities while the transferor continues to exercise control over the property;

(c) Close relationship between transferor and the nominee;

(d) Failure to record conveyance;

(e) Retention of possession by the transferor; and

(f) Continued enjoyment by the transferor of benefits of the transferred property.

*Towe Antique Ford Foundation,* 791 F.Supp. at 1454.

After considering these factors, and noting the absence of argument or a factual showing to the contrary, the Court concludes that Buffalo Brewing is the nominee of Robert Stephens for the same reasons that Buffalo Brewing is his alter ego.

### 4. MONTANA GENERAL IS ALSO THE ALTER EGO AND NOMINEE OF ROBERT L. STEPHENS, JR.

■■■ Montana General Corporation claims an interest in the properties as a creditor of Buffalo Brewing on account of the funds it expended in remodeling Parcel 3 in 1999. The United States argues that even if Montana General has a legitimate interest in Buffalo Brewing's property, Montana General is the alter ego and nominee of Robert Stephens and the United States can foreclose on the property to satisfy Stephens's tax liability.

The law regarding alter ego and nominee has been set cut in the preceding sections. In light of that law, The United States cites the following facts, which have not been refuted by Defendants. Stephens is the sole incorporator, the general manager, registered agent, and only active board member or officer of Montana General, which Stephens admits is "inactive." *Doc. 60, SUF* at ¶ 33. Although all of Montana General's shares were initially issued to Stephens they were subsequently transferred or re-issued to the Stephens

Family Trust, for which Stephens is the settlor and trustee. *Id.* As the only person involved in Montana General, Stephens was the one who decided that the money Montana General received from the sale of Stephens's previous law office and residence would be used to remodel Parcel 3. *SUF* at ¶¶ 33. Stephens was also responsible for transferring Parcel 3 to a partnership consisting of two of his relatives on December 31, 1997, for no consideration, and then conveying it to Buffalo Brewing less than a year later, also for no consideration. *SUF* ¶ 17.

There is also ample evidence that just as he has done with Buffalo Brewing, Stephens co-mingles his funds with those of Montana General. Although Parcel 3 was purchased in the name of Montana General, Stephens used income from his law practice to make the down payment. *SUF* at ¶ 18. Further, the "inactive" Montana General leases space in Parcel 3 from Buffalo Brewing in Parcel, but does not pay any rent. *SUF* at ¶ 35.

In addition, the funds Montana General used to remodel Parcel 3 were proceeds from the sale of the building it owned, but that Stephens used as his law office and residence prior to 1999. *Doc. 88, U.S. Statement Genuine Issues in Response to Mont. General's Motion for Partial Summary Judgment ("SGI"),* ¶¶ 4–7.

Most significantly, the minutes from Montana General's December 24, 2001 board meeting indicate Stephens created the mortgage between Buffalo Brewing and Montana General to prevent the I.R.S. from using Buffalo Brewing's assets to satisfy Stephens's personal tax liability. *Doc. 77, Ex. C.*

Finally, as with Buffalo Brewing, Stephens records Montana General's income and deductions on his personal tax return, *SUF* at ¶ 30, including the gain from the sale of his former law office and residence,

even though the building was owned by Montana General. *Doc. 88, SGI* ¶¶ 2 & 3.

In light of these facts, and noting Defendants' failure to respond with facts or argument of their own, the Court concludes that Montana General Corporation is the alter ego and nominee of Robert L. Stephens, Jr.

5. SINCE BUFFALO BREWING AND MONTANA GENERAL ARE THE ALTER EGOS AND NOMINEES OF STEPHENS, THE UNITED STATES MAY FORECLOSE ON PARCELS 2 AND 3 AND THE FUNDS HELD BY THE CLERK OF COURT

Once the United States makes an assessment for unpaid taxes, notifies the taxpayer of that assessment and makes a demand for payment a lien arises in favor of the United States in the amount of the assessment, plus any interest, penalties, and costs. 26 U.S.C. § 6321. This lien attaches to "all property and rights to property, whether real or personal, belonging to such person" at the time the assessment is made and continues until all amounts are paid or until the lien becomes unenforceable by the passage of time. 26 U.S.C. §§ 6321 & 6322.

As noted, the United States has properly assessed outstanding taxes against Stephens for the tax years 1988, 1994–1998, and 2000. *Doc. 62, Exs. 1–6 & 8*. Accordingly, the United States may foreclose upon Parcels 2 and 3 and funds held in the Court registry.

D. MONTANA GENERAL CORPORATION'S MOTION FOR PARTIAL SUMMARY JUDGMENT (*DOC.75*)

Montana General Corporation's motion seeks partial summary judgment that the mortgage from Buffalo Brewing to Montana General, which covered the improvement and remodeling of Parcel 3 in 1999, has a priority over some or all of the United States' re-filed tax liens.

Having already concluded that Montana General is the liter ego and nominee of Stephens, a conclusion not challenged by Defendants in any of the briefing relating to the three pending motions, Montana General cannot assert a lien interest that is superior to that of the United States. Montana General's motion must be denied.

IV. ORDER

For the foregoing reasons, **IT IS HEREBY ORDERED** as follows:

(1) Montana General Corporation's Motion for Summary Judgment (*Doc.75*) is **DENIED**;

(2) Defendants' Cross Motion for Summary Judgment (*Doc.69*) is **GRANTED** with respect to tax year 1999, but **DENIED** in all other respects; and

(3) The United States' Motion for Summary Judgment is **GRANTED**: the tax assessments against Robert L. Stephens, Jr. for the years 1988, 1994–1998, and 2000 are reduced to judgment in the amount of $140,195.78, plus interest and statutory accruals as provided by law; The United States tax liens are foreclosed upon the funds held by the Clerk of Court and Parcels 2 and 3, the parcels of real property identified in the complaint.

The Clerk of Court shall enter judgment accordingly.